572 A.2d 1298

**CITY OF PHILADELPHIA, Appellant,**

v.

**FRATERNAL ORDER OF POLICE, LODGE NO. 5, and Thomas Murphy, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1989.

Decided Feb. 20, 1990.

Reargument Denied May 1, 1990.

354

Steven K. Ludwig, Chief Asst. City Sol., with him, Ralph J. Teti, Chief Deputy City Sol., for appellant.

Anthony J. Molloy, Jr., Mozenter, Molloy & Durst, Philadelphia, for appellees.

Before BARRY, COLINS and SMITH, JJ.

COLINS, Judge.

The City of Philadelphia (City) appeals from an order of the Philadelphia County Court of Common Pleas (trial court) which vacated an arbitrator's award and reinstated Thomas Murphy (Murphy) to his position as a Philadelphia Police Officer.

The origin of Murphy's suspension and dismissal arose out of an incident which occurred while off duty on March 6, 1987. On that date, Murphy entered the New Philly Tavern located at 2629 E. Lehigh Avenue with his gun exposed and confronted the owner, Christopher Tomczak. During an altercation which followed, Murphy's gun discharged and the projectile passed through the front door of the bar. Tomczak subsequently filed a complaint against Murphy with the Philadelphia Police Department.

Following an investigation, a warrant was issued for Murphy's arrest charging him with simple assault and

recklessly endangering another person.[1] On May 19, 1987, Murphy and his attorney reported to the Internal Affairs Division Headquarters where he was Mirandized and served with the warrant by his commanding officer. Although Murphy was permitted to make a statement at this time, he immediately asserted his privilege against self-incrimination. Murphy was subsequently suspended for 30 days without pay with intent to dismiss.

On or about May 20, 1987, the Fraternal Order of Police, Lodge No. 5 (FOP) filed a grievance contesting Murphy's suspension and anticipated discharge. On May 29, 1987, Murphy was served with a formal notice of intention to dismiss advising him that he would be dismissed within 10 days for conduct unbecoming an officer and negligent duty charges under the Police Department Disciplinary Code. He was further advised that these same departmental charges served as the basis for his 30–day suspension pending dismissal given to him 10 days earlier on May 19, 1987. This notice advised Murphy: "If you believe that this intended action is unjustified, you may, ... within ten days from the service of this notice notify [the Police Commissioner] in writing of the reasons therefor and summarize the facts in support of your belief." Murphy did not respond to the notice and was subsequently discharged effective June 8, 1987.

The basis for the FOP's grievance was that Murphy, a 10–year veteran, had been dismissed without just cause, both in terms of the off-duty incident and in terms of the deprivation of Murphy's constitutional rights of due process when he was dismissed during a custodial interrogation following his arrest on May 19, 1987. Following an arbitration hearing, the arbitrator denied the grievance and found that the City had established just cause for Murphy's sus-

---

**1.** Murphy was acquitted of these charges, however, the arrest warrant triggered his immediate suspension without pay with intent to dismiss pursuant to Police Directive 79 which requires that when an off-duty officer is arrested, his commanding officer must suspend the officer for thirty (30) days pending further action by the Police Commissioner.

pension and discharge. The arbitrator found that Murphy's failure to report that his gun had discharged,[2] a violation of Police Directive No. 10,[3] constituted a waiver of his opportunity to give a statement to the Internal Affairs Bureau. Therefore, the arbitrator found no intrusion of Murphy's rights, nor due process violations. The arbitrator also found that the disciplinary action was taken in conformity with the disciplinary procedures mandated by the Philadelphia Home Rule Charter, 351 Pa.Code §§ 1.1–100—12.12–502, and the Philadelphia Civil Service Regulations, Nos. 17.01, 17.02, 17.03, as well as Article XVIII of the Collective Bargaining Agreement.

The FOP and Murphy petitioned the trial court to vacate this arbitration award pursuant to Section 7314 of the Uniform Arbitration Act (Arbitration Act), 42 Pa.C.S. § 7314, which the trial court did and ordered that Murphy be reinstated. The trial court found that Murphy received inadequate notice of the charges against him since, at the time of his arrest and suspension, no formal departmental charges were stated and since the Commissioner used a suspension without pay as a starting point of a dismissal. The trial court found this procedure to be violative of Article I, Section 9 of the Pennsylvania Constitution.[4]

**2.** Murphy testified that he did not realize his gun discharged during the confrontation with Tomczak, but did notice that a shell was missing from its chamber that evening when he checked his gun at home, but did nothing about the missing shell. Murphy further testified that he did not learn of the gun's firing until March 22, 1987.

**3.** Police Directive 10 requires officers to report the discharge of their firearm as follows:

The discharge of any firearm by an off-duty personnel (except test or target fire at a pistol range) [shall]:
(a) Immediately notify Police Radio.
(b) Advise first supervisor on the scene of circumstances; make no further statements to anyone except personnel of the Internal Affairs Bureau.

**4.** This section entitled "Rights of accused in criminal prosecutions" provides, in pertinent part:

In all criminal prosecutions, the accused hath the right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, ... he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or

The issues presented for our disposition are: (1) whether the trial court erred as a matter of law by applying the incorrect standard of review in vacating the arbitrator's award; (2) whether the arbitrator's award derived its essence from the Collective Bargaining Agreement; and (3) whether Murphy's dismissal violated Article I, Section 9, of the Pennsylvania Constitution.

The trial court stated that its scope of review was pursuant to Section 7314 of the Arbitration Act and that it would vacate or modify the arbitrator's award if the award did not meet the criteria established by Section 7314(a)(1) of the Arbitration Act, 42 Pa.C.S. § 7314(a)(1), or if the arbitrator erred in his decision as a matter of law. In fact, this was the incorrect standard of review, as this Court has held that the proper standard of review in a grievance proceeding of an individual whose arbitration rights arise from the Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10 (Act 111), is in the nature of a narrow certiorari.[5] *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989). Because Murphy falls within the scope of Act 111, the trial court's scope of review was limited to questions concerning the jurisdiction of the arbitrator, the regularity of the proceedings, questions of excess in the exercise of the arbitrators' powers, and constitutional questions. *Id.*

The City argues that under the proper scope of review, the trial court was without authority to vacate the arbitrator's award. It is further argued that the arbitrator's award derived its essence from the Collective Bargaining Agreement and should not have been vacated. For the reasons that follow, the trial court's order is reversed.

The thrust of Murphy's appeal focuses on the violation of his due process rights as a result of the Department's suspension and dismissal procedures. Murphy argues that

> property, unless by the judgment of his peers or the law of the land....

Pa. Const. art. I, § 9.

**5.** Act 111 employees are police and fire personnel.

a suspension without pay is a *de facto* dismissal which triggers a civil servant's pretermination due process rights. Here, Murphy was not given notice of the Departmental charges against him until ten (10) days after his arrest and suspension without pay. It is submitted that this practice failed to afford him timely notice of the charges against him and failed to afford him the opportunity to speak on his own behalf without the consequence of waiving his Fifth Amendment rights. *See* U.S. Const. amend. V. In addition, it is argued that this procedure was in violation of the Charter and the Philadelphia Civil Service Regulations.

The City, however, asserts that the contract between itself and the FOP provides that no employee shall be disciplined or discharged except as is consistent with the Charter and the Philadelphia Civil Service Regulations. Both the Charter and the Philadelphia Civil Service Regulations require that dismissal or demotion of employees, after the completion of the required probationary period, be for just cause only. 351 Pa.Code § 7.7–303; Philadelphia Civil Service Regulation 17.01. Likewise, both the Charter and the Philadelphia Civil Service Regulations provide that suspension from service shall not exceed 30 days and discharge can be completed only after the employee has been presented with reasons for such discharge. 351 Pa.Code § 7.7–401(p), (q); Philadelphia Civil Service Regulation 17. Thus, the regulatory scheme provides for a dismissal of permanent City employees for just cause provided the appointing authority notifies the employee at least 10 days before the effective date of dismissal of the intention to dismiss and the reasons therefor. Upon receipt of the notice containing the reasons for dismissal, the employee is given 10 days to reply in writing to those charges.

In addition to all of the foregoing, Directive 79 also governs the situation where a law enforcement officer is implicated in criminal activity. Pursuant to this directive, the commanding officer is required to notify the implicated officer of the criminal charges against him, as well as advise the officer of his *Miranda* warnings. If the arrest

occurs for criminal activity, the officer is suspended for 30 days pending further action by the Commissioner.

The City argues that the procedures surrounding Murphy's dismissal conformed with the collective bargaining agreement and all the requirements of the Charter and the Philadelphia Civil Service Regulations. Murphy was issued a notice of intention to dismiss on May 29, 1987, and did not exercise his right to challenge or respond to this intended action. Murphy was subsequently issued a notice of dismissal on June 9, 1987. Thus, it is asserted that Murphy was issued all of the required notices and provided an opportunity to respond. The City, therefore, argues that the arbitrator correctly concluded that Murphy was dismissed in accordance with the collective bargaining agreement, the Charter and the Philadelphia Civil Service Regulations. We agree.

Philadelphia Civil Service Regulation 17.01 provides, in pertinent part:

*DISMISSAL, DEMOTION AND SUSPENSION.* Any dismissal ... after the completion of the required probationary period of service, or suspension of any employee in the Civil Service shall be for just cause only.

At least ten (10) days before the effective date of dismissal ..., the appointing authority must notify the employee, in writing, of his intention to dismiss ... and the reasons therefor. The notice to the employee must state the specific reasons for the dismissal ... and summarize the facts in support thereof with sufficient particularity to allow the employee to prepare a defense to the charges....

At any time within twenty (20) days after the end of the ten (10) day period the appointing authority may, if he desires to take such action, notify the employee in writing of the effective date of the dismissal....

Philadelphia Civil Service Regulation 17.04 provides:

*SUSPENSIONS.* The appointing authority may suspend an employee without pay from his position at any time for just cause. Notice of suspension shall be given to the

employee and at the same time to the Director. Each suspension without pay shall not exceed thirty (30) calendar days.

This Court has interpreted the "just cause" requirement of the Charter, 351 Pa.Code § 7.7–303, to mean that the cause should be personal to the employee which renders him unfit for the position he occupies and makes his dismissal justifiable and for the good of the service. *Benvignati v. Civil Service Commission*, 106 Pa.Commonwealth Ct. 643, 527 A.2d 1074 (1987). Thus, all the law requires is that the cause for dismissal concern the inefficiency, delinquency or misconduct of the employee. *Id.*

■ As a permanent civil service employee, Murphy had a substantive property interest in his continued employment with the police department which was subject to procedural protections of the due process clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV. *Williams v. City of Pittsburgh*, 109 Pa.Commonwealth Ct. 168, 531 A.2d 42 (1987). Accordingly, deprivation of such interest could only be achieved through procedural mechanisms comporting with the appropriate minimum standards of due process. *Cleveland Board of Education v. Loudermill*, 468 U.S. 1249, 105 S.Ct. 50, 82 L.Ed.2d 941 (1985).

■ In *Adamovich v. Department of Public Welfare*, 95 Pa.Commonwealth Ct. 22, 504 A.2d 952 (1986), this Court adopted the test for determining whether pretermination proceedings satisfy due process requirements established by the United States Supreme Court in *Loudermill*. Thus, prior to dismissal, an employee is entitled to notice of the charges against him, an explanation of the employer's evidence, and an opportunity to respond at an informal pretermination hearing. *Adamovich*. This pretermination procedure was deemed necessary to serve as an initial check against a mistaken decision and to determine whether reasonable grounds exist to support the termination. *Pennsylvania Social Services Union, Local 668 v. Department of*

*Labor & Industry,* 105 Pa.Commonwealth Ct. 264, 524 A.2d 1005 (1987).

█ In the present matter, Murphy was notified of his suspension when he was served with the arrest warrant on May 19, 1987. He was suspended because of his implication in criminal activity. Murphy was well aware of the facts of March 6, 1987, which led up to the issuance of the arrest warrant. Accordingly, we believe that there was just cause for Murphy's suspension and that his suspension met the requirements of Philadelphia Civil Service Regulation 17.04.

█ Likewise, prior to his dismissal, Murphy was notified of the charges against him and given an opportunity to rebut any of the charges or correct any inaccuracies upon which the charges were based.[6] Murphy himself freely elected not to respond to the charges. Although Murphy was not afforded a full evidentiary hearing prior to his dismissal, we believe that Murphy was provided an appropriate form of "hearing" which satisfied the notice and opportunity to respond requirements of *Loudermill.* Accordingly, we find the procedure employed by the City in this instance to be constitutionally sound and in conformance with the Charter, Philadelphia Civil Service Regulations, and the Collective Bargaining Agreement. *See Pennsylvania Social Services Union.*

█ In addition, we find that Murphy's rights under Article I, Section 9 of the Pennsylvania Constitution were not violated since, at the time of his arrest, Murphy was served with the arrest warrant, informed of the *criminal* charges against him, and was not compelled to incriminate himself. Murphy's suspension from the Police Department was a result of his arrest. The fact that Murphy was not at that time informed of the departmental charges against him which led to his subsequent dismissal, did not violate his Article I, Section 9 rights. The departmental charges sur-

6. Although we disagree with the arbitrator's conclusion that Murphy waived his due process guarantees by failing to report the firing of his gun, we, nevertheless, find the pretermination procedure employed by the City to be constitutionally sound.

rounding his dismissal were civil and administrative in nature not criminal and, therefore, were properly not included with the criminal charges. As already discussed, prior to his dismissal, Murphy was informed of the departmental charges in a manner which passed constitutional muster.

Based upon the foregoing discussion, we conclude that, under the proper scope of review, Murphy's dismissal did not violate either Article I, Section 9 of the Pennsylvania Constitution, nor the Fourteenth Amendment to the United States Constitution. Because we find that the arbitrator's award derived its essence from the Collective Bargaining Agreement, as Murphy's dismissal was for just cause, we conclude that the trial court improperly vacated the arbitrator's award.

Accordingly, the order of the trial court is reversed and the arbitrator's award reinstated.

## ORDER

AND NOW, this 20th day of February, 1990, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed and the arbitrator's award is reinstated.