592 A.2d 779

**CITY OF PHILADELPHIA, Appellant,**

v.

**FRATERNAL ORDER OF POLICE, LODGE NO. 5, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1991.

Decided May 31, 1991.

Petition for Allowance of Appeal Denied Nov. 16, 1991.

236

Steven K. Ludwig, Philadelphia, for appellant.

Michael R. Kopac, III, Philadelphia, for appellee.

Before PALLADINO, and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County which upheld an arbitrator's award and reinstated Johnny Boykins (Boykins) to his position as a Philadelphia Police Officer.

Boykins' suspension and dismissal arose out of an incident which occurred while he was off duty on September 7, 1985. On that date, Boykins purportedly struck an individual over the head with his fists and the butt of his service revolver, causing that individual severe injuries.

On September 10, 1985, Boykins was advised by his 12th Police District Commanding Officer that an arrest warrant had been issued against him, charging him with aggravated assault, simple assault, recklessly endangering another person and possession of an instrument of crime.[1] Boykins surrendered to the Department's Internal Affairs Division, where he was read his *Miranda* warnings and served with the warrant by his commanding officer. Although Boykins was afforded an opportunity to make a statement at that time, he took the advice of his attorney and asserted his privilege against self-incrimination. Boykins was subsequently suspended for thirty days without pay with intent to dismiss by order of the Police Commissioner.

1. The arrest warrant triggered Boykins' immediate suspension without pay with intent to dismiss pursuant to Police Directive 79 which requires that when an off-duty officer is arrested, his commanding officer must suspend the officer for thirty (30) days pending further action by the Police Commissioner.

On September 11, 1985, the Fraternal Order of Police, Lodge No. 5 (FOP), filed a grievance on behalf of Boykins, challenging Boykins' suspension and anticipated dismissal. On September 19, 1985, Boykins was personally served with a formal notice of intention to dismiss, advising him that he would be dismissed within ten days for conduct unbecoming an officer under the Police Department Disciplinary Code. Boykins was further advised that these same departmental charges would be applied retroactively and would serve as the basis of his suspension. The notice advised Boykins: "If you believe that this intended action is unjustified, you may, ... within ten days from the service of this notice, notify [the Police Commissioner] in writing of the reasons therefor and summarize the facts in support of your belief." Boykins did not respond to the notice and was subsequently discharged effective September 29, 1985.

Arbitration proceedings, deferred until Boykins' criminal charges were adjudicated, were commenced after Boykins was tried and acquitted of all criminal charges, and the Police Commissioner refused the FOP's demand to fully reinstate Boykins. The parties agreed to bifurcate the proceedings, submitting only the issue of whether the City complied with the suspension and dismissal procedures set forth in the Philadelphia Home Rule Charter (Charter) and the Philadelphia Civil Service Regulations (Regulations), which are incorporated by reference into the City's collective bargaining agreement with the FOP.

On November 21, 1988, the arbitrator found that Boykins' suspension and placement into custody without a prior opportunity for a hearing on the departmental charges violated Boykins' due process rights. The arbitrator held that the relevant court decisions on the due process rights of government employees do not permit the Police Department to initially dismiss Boykins, and, sometime later, advise him of the reason for his dismissal and afford him an opportunity to respond. Accordingly, the arbitrator reinstated Boykins with back pay.

The City petitioned the trial court to vacate the arbitrator's decision, because the arbitrator did not have authority to consider a constitutional issue, and even if the arbitrator had such authority, he erred in finding that the City had violated Boykins' due process rights. The trial court found that the arbitrator did have jurisdiction to decide constitutional questions, that Boykins' due process rights had been violated, and that the award was proper, because the award drew its essence from the collective bargaining agreement. The City's appeal to this Court followed.

Initially, the City contends that the trial court applied an incorrect standard of review in upholding the arbitration award. The trial court, citing *Philadelphia Housing Authority v. Union of Security Officers # 1*, 500 Pa. 213, 455 A.2d 625 (1983), stated that its scope of review was whether the arbitration award is reasonable and drew its essence from the Charter and the Regulations as incorporated by reference in the collective bargaining agreement. We agree with the City that the trial court applied the incorrect scope of review in this case.

The scope of review applied by the trial court, whether the arbitration award draws its essence from the collective bargaining agreement, is akin to the standard set forth in Section 7302(d)(2) of the Uniform Arbitration Act, 42 Pa. C.S. § 7302(d)(2), and is appropriate when examining a grievance arbitration case under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301 (Act 195).[2]  *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 129 Pa.Commonwealth Ct. 392, at 396, 565 A.2d 1232, at 1234 (1989); *see also Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). Under Section 7302(d)(2), a reviewing court is permitted to modify or correct an arbitration award only where "the award is contrary to law and is such that had it been a

2. Act 195 employees include prison and mental hospital guards and court-appointed employees. 43 P.S. § 1101.805.

verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict." *City of Philadelphia,* 129 Pa.Commonwealth Ct. at 396, 565 A.2d at 1234.

Where, as here, arbitration rights arise from the Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10 (Act 111),[3] the proper standard of review in a grievance proceeding is in the nature of a narrow certiorari. *Appeal of Upper Providence Police Delaware County Lodge # 27 Fraternal Order of Police,* 514 Pa. 501, 526 A.2d 315 (1987); *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 132 Pa.Commonwealth Ct. 352, 572 A.2d 1298 (1990); *City of Philadelphia,* 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989). Although Act 111 provides that the determination of the board of arbitrators "shall be final" and "no appeal therefrom shall be allowed to any court," 43 P.S. § 217.7, the determination that courts had inherent, *albeit* limited, power to review Act 111 arbitration awards for questions concerning the jurisdiction of the arbitrators, the regularity of the proceedings, an excess in the exercise of the arbitrators' powers, and any constitutional questions, has been consistently adhered to by the courts in this Commonwealth.[4] *Appeal of Upper Providence Police,* 514 Pa. at 506, 526 A.2d at 319.

**3.** Act 111 employees are police and fire personnel. 43 P.S. § 217.1.

**4.** "This narrow scope of review is based upon the recognition that Act 111 employees have no right to strike, the consequent public policy concern that their disputes be quickly settled and appeals discouraged, and, more importantly, upon Section 7(a) of Act 111, 43 P.S. § 217.-7(a), which pertinently directs: 'The determination of the majority of the board of arbitration ... shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved ... No appeal therefrom shall be allowed to any court.'" *City of Philadelphia,* 129 Pa.Commonwealth Ct. at 395, 565 A.2d at 1234 (*citing* 43 P.S. § 217.7(a); *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969)).

Because of the narrow certiorari scope of review, there is no legal error or question of law review of Act 111 arbitration awards. *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia,* 118 Pa.Commonwealth Ct. 132, 546 A.2d 137, *appeal granted* 521 Pa. 614, 557 A.2d 345 (1988).

The City contends that under the narrow certiorari scope of review, the trial court should have vacated the arbitrator's award because the arbitrator exceeded his authority in ruling on the constitutional question of whether the City violated Boykins' due process rights. We agree.

■ The collective bargaining agreement entered into between the City and the FOP specifically sets forth the arbitrator's jurisdiction. Section XIX(G) of the collective bargaining agreement provides that the arbitrator "shall have no authority to add to, subtract from, or in any way alter the terms of the contract." In effect, the collective bargaining agreement limits the arbitrator's authority to determining whether the City was in compliance with the Charter and the Regulations,[5] and not whether the City has violated any constitutional rights. Because the arbitrator in the present appeal did not rule on whether the City complied with the suspension and dismissal procedures set forth in the collective bargaining agreement, but instead ruled on the due process issue raised by the FOP, an issue that was not before the arbitrator in the bifurcated arbitration proceeding, the arbitrator exceeded his authority under the collective bargaining agreement. Accordingly, the trial court should have vacated the arbitration award.

Finally, the City contends that even if the arbitrator had acted within the authority granted him pursuant to the collective bargaining agreement, the award should have been vacated because the City did not violate Boykins' constitutional rights which are protected by the Due Process Clause.[6] In response to the FOP's argument that a suspension without pay is a *de facto* dismissal, and that Boykins was not given notice and an opportunity to respond to the departmental charges against him until nine days after his arrest and suspension without pay, the City con-

5. *Accord United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (an arbitrator is confined to interpretation and application of the collective bargaining agreement, and does not sit to dispense his own brand of industrial justice).

6. U.S. Const. amend. XIV, § 1.

tends that Boykins was issued all of the required notices and was provided an opportunity to respond, and that the arbitrator incorrectly concluded that Boykins was dismissed in violation of the collective bargaining agreement. We agree.

The collective bargaining agreement provides that no employee shall be disciplined or discharged except as is consistent with the Charter and the Regulations. Both the Charter and the Regulations provide that any dismissal or demotion after the completion of the required probationary period of service, or suspension[7] of any employee in the Civil Service, shall be for just cause only.[8] 351 Pa.Code § 7.7–303; Regulation 17.01.[9] A suspension from service

7. "Suspension" is defined as "an employee's temporary and involuntary separation from City employment for a disciplinary purpose or pending investigation of charges made against the employee." Regulation 2.46.

8. Permanent employees may be dismissed for just cause at any time by the appointing authority. Regulation 17.02. The Police Commissioner is the appointing authority of the Philadelphia Police Department. 351 Pa.Code § 5.5–200.

This Court has interpreted the "just cause" requirement of the Charter, 351 Pa.Code § 7.7–303, to mean that the cause should be personal to the employee which renders him or her unfit for the position occupied and makes dismissal justifiable and for the good of the service. *Benvignati v. Civil Service Commission,* 106 Pa.Commonwealth Ct. 643, 527 A.2d 1074 (1987). All the law requires is that the cause for dismissal concern the inefficiency, delinquency or misconduct of the employee. *Id.*

9. Section 17.01 provides:

*Dismissal, Demotion and Suspension.* Any dismissal or demotion after the completion of the required probationary period of service, or suspension of any employee in the Civil Service, shall be for just cause only.

At least ten (10) days before the effective date of a dismissal or demotion, the appointing authority must notify the employee, in writing, of his intention to dismiss or demote and the reasons therefor. The notice to the employee must state the specific reasons for the dismissal or demotion and summarize the facts in support thereof with sufficient particularity to allow the employee to prepare a defense to the charges. A copy of such notice shall forthwith be filed with the Director. Within ten (10) days following service of the notice, the employee may reply thereto in writing. At the same time the employee shall file a copy of such a reply with the Director.

shall not exceed thirty days, and discharge can be completed only after the employee has been presented with reasons for such discharge.[10]   351 Pa.Code § 7.7–401(p), (q); Regulation 17.

Moreover, Directive 79 also governs the situation where a police officer is implicated in criminal activity. Pursuant to this directive, the commanding officer is required to notify the implicated officer of the criminal charges against him and to advise the officer of his *Miranda* warnings. If the arrest occurs for criminal activity, the officer is immediately suspended for thirty days pending further action by the Police Commissioner.

As a permanent civil service employee, Boykins had a substantive property interest in his continued employment with the police department which was subject to the procedural safeguards of the due process clause. An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and an opportunity to be heard. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). This principle requires "some kind of a hearing" prior to the deprivation of the protected interest.[11]   *Board of Regents v. Roth,* 408 U.S.

At any time within twenty (20) days after the end of the ten (10) day period, the appointing authority may, if he desires to take such action, notify the employee in writing of the effective date of the dismissal or demotion and the specific reasons therefor. The appointing authority shall forthwith file a copy of this notice with the Director. If such a notice of dismissal or demotion is not sent within the twenty (20) day period, the original notice of intention shall lapse and be of no effect.

10. An employee may be suspended without pay at any time for just cause for a period not to exceed thirty (30) calendar days. Regulation 17.04.

11. In *Loudermill,* the United States Supreme Court held that:
The pretermination "hearing," though necessary, need not be elaborate ... The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken, is a fundamental due process requirement. The tenured

564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The hearing need not definitely resolve the propriety of the discharge, according to the *Loudermill* decision. *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 138 Pa.Commonwealth Ct. 219, 587 A.2d 860 (1991). Moreover, the notice and hearing requirements apply not only to dismissals but to suspensions as well. *Gniotek v. City of Philadelphia*, 808 F.2d 241 (3d Cir.1986), *cert. denied* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987).

In *Shah v. State Board of Medicine*, 139 Pa.Commonwealth Ct. 94, 589 A.2d 783 (1991), we addressed the issue of what is required to satisfy due process and, in doing so, followed the three-prong analysis of the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The *Mathews* Court, commenting that "due process is flexible and calls for such procedural protections as the particular situation demands," set forth three factors to be considered in determining whether the procedures utilized satisfy due process.

■■■ The first factor is the private interest affected by the government's action. In the present appeal, the private interest is Boykins' continued employment with the police department which was deprived when Boykins was suspended with intent to dismiss, effective for thirty days or until dismissal.[12]

> public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.
>
> *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495 (citations omitted).

12. The duration of any potentially wrongful deprivation of a property interest is also an important factor in assessing the impact of official action on the private interest involved. *Mackey v. Montrym*, 443 U.S. 1, 12, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979); *Fusari v. Steinberg*, 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975). In *Shah*, we held that a thirty-day suspension is a relatively short period of

The second *Mathews* factor requires consideration of the likelihood of an erroneous deprivation of the private interest involved as a result of the governmental procedures used.[13] The purpose of the suspension is to temporarily remove the accused officer from employment while the commanding officer conducts an investigation into the facts and to file reports pursuant to Directive 79. This procedure is designed to lessen the chance that there will be an erroneous deprivation and provides a basis to establish just cause for the suspension. Should an erroneous deprivation occur, however, the police officer would be entitled to back pay for the duration of the improper suspension.

The third *Mathews* factor requires identification of the governmental function involved and a balancing of the state interests served by the procedures used, as well as any burden from additional or substitute procedures. "Although persons may ordinarily expect an opportunity to be heard prior to an adverse governmental decision regarding a substantial interest, post-deprivation process is appropriate where countervailing state interests are of an unquestionably strong nature and pre-deprivation process would insufficiently protect those countervailing interests." *Fanning v. Montgomery County Children & Youth Services*, 702 F.Supp. 1184, 1189 (E.D.Pa.1988). The government has a substantial interest in retaining public trust in the police department and in removing police officers allegedly implicated in criminal activity who might betray that trust or who may pose a threat to the health, safety and welfare of the public.

Given the City's substantial countervailing interest in protecting the public from improper police conduct, the procedure used to suspend a police officer pending further action by the Police Commissioner satisfies due process and obviates the need for a full-blown pre-suspension hearing.

time. *Shah*, 139 Pa.Commonwealth Ct. at ——, 589 A.2d at 789 (1991).

13. The Supreme Court has stated, however, that "the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectable 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error." *Mackey*, 443 U.S. at 13, 99 S.Ct. at 2618.

■   In addition to the foregoing constitutional analysis, we note that the issue of whether Boykins' constitutional rights were violated when the City did not give Boykins notice of the departmental charges against him until nine days after his arrest and suspension without pay was addressed in a case virtually identical to the present appeal. In *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 132 Pa.Commonwealth Ct. 352, 572 A.2d 1298 (1990), this Court stated as follows:

> In the present matter, Murphy [a former Philadelphia police officer] was notified of his suspension when he was served with the arrest warrant on May 18, 1987. He was suspended because of his implication in criminal activity. Murphy was well aware of the facts of March 6, 1987, which led up to the issuance of the arrest warrant. Accordingly, we believe that there was just cause for Murphy's suspension and that his suspension met the requirements of Philadelphia Civil Service Regulation 17.-04.
>
> Likewise, prior to his dismissal, Murphy was notified of the charges against him and given an opportunity to rebut any of the charges or correct any inaccuracies upon which the charges were based. Murphy himself freely elected not to respond to the charges. Although Murphy was not afforded a full evidentiary hearing prior to his dismissal, we believe that Murphy was provided an appropriate form of "hearing" which satisfied the notice and opportunity to respond requirements of *Loudermill*. Accordingly, we find the procedure employed by the City in this instance to be constitutionally sound and in conformance with the Charter, Philadelphia Civil Service Regulations, and the Collective Bargaining Agreement.
>
> In addition, we find that Murphy's [constitutional] rights ... were not violated since, at the time of his arrest, Murphy was served with the arrest warrant, informed of the *criminal* charges against him, and was not compelled to incriminate himself. Murphy's suspension from the Police Department was a result of his arrest. The fact

that Murphy was not at that time informed of the departmental charges against him which led to his subsequent dismissal, did not violate his [constitutional] rights. The departmental charges surrounding his dismissal were civil and administrative in nature [and] not criminal and, therefore, were properly not included with the criminal charges. As already discussed, prior to his dismissal, Murphy was informed of the departmental charges in a manner which passed constitutional muster.

*City of Philadelphia,* 132 Pa.Commonwealth Ct. at 351–62, 572 A.2d at 1302–03 (emphasis in the original) (footnote, citation omitted).

We find both *City of Philadelphia,* 132 Pa.Commonwealth Ct. 352, 572 A.2d 1298 (1990) and *City of Philadelphia,* 138 Pa.Commonwealth Ct. 219, 587 A.2d 860 (1991) to be controlling in this appeal. The dismissal procedures employed in the present case are identical to those utilized in both *City of Philadelphia* cases and in *Gniotek,* which upheld the constitutionality of the Philadelphia Police Department's dismissal procedures. Because Boykins was afforded the procedural protections mandated by the Due Process Clause, the City did not violate his constitutional rights by suspending him prior to notification of the departmental charges and opportunity to respond to the charges.

The order of the trial court is reversed.

## ORDER

AND NOW, this 31st day of May, 1991, the order of the Philadelphia County Court of Common Pleas, dated May 8, 1990, is hereby reversed.