IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of: Clarence Foster  :
           : No. 1257 C.D. 2022
           :
From a Decision of:    :
School District of Philadelphia :
Board of Education    : Argued: April 9, 2024


BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE LORI A. DUMAS, Judge
     HONORABLE MATTHEW S. WOLF, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOLF      FILED: May 6, 2024


Clarence Foster (Appellant) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) entered on September 30, 2022, affirming an adjudication of the School District of Philadelphia Board of Education (Board), dismissing Appellant from employment with the School District of Philadelphia (District). For the reasons that follow, we affirm.

## BACKGROUND

Appellant was hired by the District in October of 2010. At the time of the incident in question, Appellant worked as a one-to-one special education classroom assistant at the Kensington Creative & Performing Arts High School (School). Hearing Officer's Finding of Fact (F.F.) No. 2.[1]

By letter dated March 10, 2020, the District notified Appellant that it was recommending termination of his employment for "incompetency, neglect of duty

---

[1] The Hearing Officer's Findings of Fact and Conclusions of Law are found at pages 422a-35a of Appellant's Reproduced Record (R.R.).

and improper conduct" pursuant to Section 514 of the Public School Code of 1949 (School Code).[2] The notice further advised Appellant that he had a right to contest the recommendation by requesting a hearing. F.F. Nos. 3, 4.

Appellant elected to challenge the recommendation and a hearing was held before a Hearing Officer on September 23, 2021. At the hearing, the District presented the following witnesses in support of the charges: Lissette Agosto-Cintron, the School's Principal (Principal), Theresa Zenak, special education teacher (Teacher), and Sheila Wallin, a labor relations officer in the District's Office of Employee & Labor Relations (Labor Relations Officer Wallin). Appellant, represented by Counsel, testified on his own behalf. Appellant did not present any other witnesses. F.F. Nos. 6-9, 12.

The District's witnesses testified to the following. During the 2018-2019 school year, Appellant was assigned to assist a special education student with the initials J.G. J.G. is nonverbal and intellectually disabled. Appellant's duties included staying with J.G. all day, transitioning J.G. from one activity or location to the next, and monitoring J.G. in educational and community settings. F.F. Nos. 15-17.

On March 29, 2019, Teacher, Appellant, and another classroom assistant accompanied a group of special education students to a Walmart store for their weekly life-skills trip. Appellant was responsible for monitoring and caring for J.G. during the trip. F.F. Nos. 18, 19.[3]

---

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §5-514.

[3] Appellant testified he was assigned to monitor three students (including J.G.) on the trip; however, Teacher testified that Appellant was only assigned to monitor J.G. The Hearing Officer observed: "Either way, everyone agreed that monitoring J.G. was [Appellant's] responsibility." F.F. No. 19 n.5.

When the group boarded the bus to return to the School, Teacher asked the assistants if all of their assigned students were with them. The assistants responded "Yes," including Appellant. F.F. No. 20. Teacher "relied on those confirmations instead of conducting a roll call of the students by name." *Id.*, No. 21. The Hearing Officer noted: "Given that J.G. is nonverbal, both [Principal] and [Labor Relations Officer] believed it was reasonable for [Teacher] to rely on [Appellant's] response." *Id.*, n.6.

The bus returned to the School around 12:30 p.m. and the students were to go to their art classes. Appellant was supposed to accompany J.G. to his art class but failed to do so. At approximately 1:30 p.m., Appellant left the School building, without asking Principal for the required authorization to do so. Appellant did not sign out of the building although he knew he was required to do so. F.F. Nos. 22-26.

At around 2:00 p.m., Principal was informed that the School secretary had received a telephone call from Walmart stating that a student was in its security office and that J.G. matched the student's description. Principal called Teacher, who indicated she had been looking for J.G. because he did not return to her class after art class. Teacher stated that she had called Appellant who stated he was not in the building and that J.G. was not with him. Teacher proceeded to send another classroom assistant to pick up J.G. F.F. Nos. 27-29.

Principal conducted an investigation and interviewed Teacher, Appellant, two other classroom assistants, a social-emotional learning teacher, and two Walmart employees. Based on her investigation, Principal concluded that Appellant left J.G. unattended, which resulted in J.G. being left behind at Walmart. Further, Appellant

left the School building without authorization and without noticing that J.G. was missing.  F.F. Nos. 30, 31.

On May 22, 2019, Principal held an investigatory conference with Appellant, Ed Olsen (Union Representative) and Kevin Moore (a labor relations officer).  At the conference, Appellant was given the opportunity to tell his version of what occurred on the day in question.  F.F. No. 32.

Appellant related that the last time he saw J.G. was at the McDonald's located inside the Walmart.  The trip participants had gathered there for lunch prior to boarding the bus.  F.F. No. 34.  Appellant admitted that he did not count his assigned students and did not realize that J.G. was not on the bus even though J.G. was his "one-to-one" student.  *Id.*, No. 35.  Appellant did not know J.G. was missing until he received a phone call from Teacher asking if J.G. was with him.  Appellant responded that, as far as he knew, J.G. was in the building.  *Id.*, Nos. 36, 37.

Principal prepared a summary of what occurred at the conference and recommended Appellant be terminated from employment because he: left J.G. unattended, resulting in him being left behind at the Walmart; and left the school building without authorization and without noticing that J.G. was missing.  F.F. Nos. 38, 39.

On September 19, 2019, Principal held another conference to discuss her recommendation with Appellant, Union Representative, and a labor relations liaison.  At that conference, Appellant was provided with another opportunity to present his version of events.  Principal reaffirmed her recommendation for termination.  F.F. Nos. 40-42.

On January 22, 2020, Labor Relations Officer Wallin conducted a "second-level conference" with Appellant and Union Representative.  F.F. No. 43.  At this

4

conference, Appellant and his union representative were given an opportunity to respond to a neutral party regarding Principal's findings and recommendation. F.F. No. 44. After reviewing all of the documents submitted and conducting the second-level conference, Labor Relations Officer Wallin found that Appellant failed to support his assertion that he was not responsible to monitor the students assigned to him on the date in question; Appellant was so negligent that a vulnerable student was left behind; and Appellant abandoned his responsibility to notify the administration regarding his departure from the building on the date in question. *Id.*, No. 45. Labor Relations Officer Wallin concluded that it was an egregious violation of Appellant's job duties to leave a nonverbal student at a remote location and tell the teacher J.G. was on the bus when he was not. Labor Relations Officer Wallin agreed with Principal's recommendation to terminate Appellant. *Id.*, Nos. 46-48.

Appellant admitted the following during his testimony. He was working with and was assigned to J.G. since the fall of 2018. He was assigned to monitor and escort J.G. on the trip to the Walmart store. Appellant did not see J.G. on the bus before it returned to the school. Appellant did not alert Teacher that J.G. was not on the bus. When the group returned to the school, Appellant did not escort J.G. off the bus and into the building. He did not know where J.G. was when the bus returned to the school. F.F. No. 50a-50f.

In his defense, Appellant denied that Teacher asked if his assigned students were on the bus. The Hearing Officer found this denial not credible because: Appellant made no such assertion in the written statement he provided to Principal; he made no such assertion in either of the conferences with Principal; he made no such assertion with Labor Relations Officer Wallin at the second-level conference; there is no evidence that he made such an assertion at any time before the hearing;

5

the assertion was contradicted by Appellant's own testimony that "once we basically got on the bus, we sat down, [Teacher] said was everybody here if I remember correctly and we came back to the school"; and the assertion was contradicted by all other testimony and exhibits describing what was said on the bus. F.F. No. 51a-51f.

The Hearing Officer also addressed Appellant's contention that Teacher failed to take roll call to assure that all students were on the bus before leaving the store. The Hearing Officer observed that it was reasonable for Teacher to rely instead on the adults' responses that all their students were on the bus, especially because J.G. was not able to respond to roll call himself. F.F. No. 52. Furthermore, to the extent Appellant argued he was not provided with adequate training and professional development, the Hearing Officer rejected this argument as well. In the Hearing Officer's view, none of that was necessary to fulfill his responsibility to monitor his one-to-one student. F.F. No. 53.

With regard to his absence from the School building, Appellant testified that he told Teacher on the day of the incident and the previous day that he needed to go to the District's administration building during his lunch break to discuss some issues and she "said that was 'appropriate' and 'wasn't a problem.'" F.F. No. 54. The Hearing Officer rejected this testimony stating:

> [N]o evidence was presented to establish that teachers were authorized to approve such departures and [Principal] testified that only she had that authority. Thus, if the asserted conversations occurred, they merely indicated that [Teacher] was not opposed to [Appellant] leaving the [S]chool building during his lunch break and were not a substitute for the required authorization from [Principal].

*Id.* (citation to transcript omitted). The Hearing Officer similarly rejected Appellant's testimony that he informed the school secretary when he left the building because Appellant did not dispute that he had no authorization from Principal and did not sign out as required. F.F. No. 55.

The Hearing Officer concluded that Appellant was employed by the District in a capacity that is not within the School Code's definition of a "professional employe[e]," a "substitute" or a "temporary professional employe[e]." *See* Section 1101(1)-(3) of the School Code, 24 P.S. §11-1101(1)-(3). Accordingly, Appellant's employment could be terminated for "incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct." Section 514 of the School Code. Hearing Officer's Conclusions of Law (C.L.) Nos. 2-3.

Based on the above findings of fact, the Hearing Officer believed there was sufficient cause to terminate Appellant's employment for incompetency because he performed his required duties so poorly that he left J.G., his assigned student, behind at a Walmart store where he remained without supervision for more than two hours. C.L. No. 6. Further, there was sufficient cause to terminate Appellant's employment for neglect of duty because he failed to supervise J.G. and left school without authorization while J.G. was missing, leaving his duties undone and endangering J.G.'s health, safety, and welfare. Finally, there was sufficient cause to terminate Appellant's employment for "other improper conduct" as his actions broke the trust of both his employer and his student, were contrary to established school district standards, and may fairly be considered equivalent to incompetency, intemperance, neglect, or violation of school laws. *Id.*, Nos. 10, 15.

7

The Hearing Officer concluded that the District provided Appellant with "ample and sufficient due process, including appropriate notice of the charges against him and a hearing with an opportunity to be represented and heard." C.L. No. 20. In addition, the Hearing Officer rejected the following: Appellant's assertion that it was improper for Labor Relations Officer Wallin to conduct the second-level conference because she is employed by a contractor that provides administrative support to the District, not by the District itself; Appellant's assertion that assigning Labor Relations Officer Wallin to conduct the second-level conference violated "the Past Practice Clause of the [Union] Contract"; Appellant's argument that the administrative procedure followed by the District violated Appellant's due process rights because he was suspended without pay before being provided with a right to an attorney and a right to cross-examine adverse witnesses; Appellant's contention that administrative employees of the District have no authority to suspend the pay of an employee without prior Board action; and Appellant's assertion that his suspension without Board resolution violated the Sunshine Act.[4] *Id.*, Nos. 20-25. Accordingly, the Hearing Officer believed that substantial evidence existed to support the District's recommendation to terminate Appellant's employment. On January 3, 2022, the Hearing Officer issued his recommendation that the Board terminate Appellant for the reasons set forth in his Findings of Fact and Conclusions of Law.

On January 27, 2022, the Board voted to terminate Appellant's employment. Reproduced Record (R.R.) 415a-20a. The Board's Public Meeting Minutes state:

---

[4] 65 Pa.C.S. §§ 701-716.

8

RESOLVED, [Appellant] is dismissed from his employment by [the District] as a classroom assistant, effective immediately.

FURTHER RESOLVED, that the Hearing Officer's Findings of Fact and Conclusions of Law on file with the minutes of the [Board] are adopted as the reasons for this decision.

FURTHER RESOLVED, that this decision was made in accordance with [the School Code], following an independent review of the record by the individual members of the [Board].

*Id.* at 419a.

Appellant appealed to the trial court. By order entered September 30, 2022, the trial court denied Appellant's appeal. Appellant filed a timely notice of appeal to this Court.[5]

---

[5] On December 14, 2022, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), opining that Appellant failed to preserve any issues for appellate review by virtue of his failure to timely file a Statement of Errors Complained of on Appeal (1925(b) Statement) with the trial court's Office of Judicial Records and the trial court judge. Appellant filed an application for relief pursuant to Pa.R.A.P. 123 with this Court, arguing that the 1925(b) Statement was timely filed. We remanded this action to the trial court for a determination of whether the 1925(b) Statement was timely. The trial court issued a supplemental opinion concluding that the 1925(b) Statement was timely filed and addressing the merits of Appellant's case.

Appellant raises 10 issues on appeal to this Court.[7]  First, he asks this Court to consider whether the District followed the procedures outlined in Section 514 of the School Code when it terminated his employment.  Subsumed therein is the question of whether the District had the authority to suspend his pay pending the outcome of termination proceedings and whether he was afforded sufficient due process.  Appellant also challenges whether his actions, as found by the Board, justify the termination of his employment.

**DISCUSSION**

Section 514 of the School Code sets forth the procedural requirements for the dismissal of a nonprofessional employee like Appellant.  It states:

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employes, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

24 P.S. § 5-514.  In *Lewis v. School District of Philadelphia*, 690 A.2d 814, 817 (Pa. Cmwlth. 1997), a case that involved the termination of a school custodian, this Court recognized that nonprofessional public school employees have a property right in their expectation of continued employment, as defined in Section 514 of the School

---

[6] Our scope of review of a trial court's order affirming a school board's dismissal of an employee under Section 514 of the School Code is limited to considering whether constitutional rights were violated, whether the board committed an error of law, and whether the board's findings of fact are supported by substantial evidence. *School District of Philadelphia v. Puljer*, 500 A.2d 905, 907 (Pa. Cmwlth. 1985).

[7] We paraphrase them here for clarity and ease of discussion.

Code, and that a school board must comply with procedural due process safeguards when dismissing them for cause.[8]

In its decision, the *Lewis* court held that the Board has broad discretion to delegate to hearing officers the task of conducting hearings and concluded that the Board had fully complied with the requirements of due process by "(1) appointing a hearing officer to hold a hearing at which Lewis was represented by counsel and had the opportunity to cross-examine witnesses; (2) reviewing the officer's findings of facts, conclusions of law and recommendation; and (3) making an independent ruling based on the entire record." *Lewis*, 690 A.2d at 817.

In this case, there is no dispute that Appellant was a nonprofessional employee of the District and, therefore, his discharge was governed by Section 514 of the School Code. The overarching issue presented is whether the procedural safeguards set forth in Section 514 were followed when Appellant was dismissed from his position as a one-to-one special education classroom assistant.

Based on our review of the record, we cannot say that the procedural requirements of Section 514 were not followed or that Appellant's right to due process was violated. The District gave Appellant multiple opportunities to provide his version of events *prior to* receiving notice of the reasons for his dismissal and the opportunity for a hearing. Specifically, Appellant was interviewed during Principal's investigation; participated in two investigatory conferences on May 22, 2019 and September 19, 2019 that included Appellant, Union Representative, and a labor relations officer; and took part in a January 22, 2020 "second-level conference"

---

[8] These procedural requirements are different from those required for the dismissal of professional school employees, like teachers. Teacher terminations are governed by Sections 1101, 1122, 1126, 1127, 1129 and 1130 of the School Code, 25 P.S. §§ 11-1101, 11-1122, 11-1126, 11-1127, 11-1129 and 11-1130.

11

with Labor Relations Officer Wallin and Union Representative. On March 10, 2020, the District sent Appellant a statement of charges and notice of right to hearing (statement of charges). The statement of charges clearly and succinctly set forth the allegations against Appellant and provided him with the opportunity to request a hearing under the Local Agency Law.[9]

Upon Appellant's request, a full hearing was held before a neutral arbiter and Appellant, represented by counsel, was given the opportunity to present testimony and evidence, and to cross-examine the District's witnesses. Moreover, contrary to Appellant's claims, the record indicates that the Board reviewed the Hearing Officer's findings of fact, conclusions of law, and recommendation, and made a ruling based on the entire record. *See* R.R. 419a.[10, 11]

---

[9] 2 Pa.C.S.§§ 551-555, 751-754.

[10] To the extent Appellant argues that the Board failed to participate in, or deliberate on, Appellant's case, the argument is without merit and borders on frivolous. Appellant did not present any evidence to the contrary. Furthermore, as noted in *Lewis*, the Board has broad discretion to delegate to hearing officers the task of conducting hearings.

[11] Appellant raises an additional, albeit brief, argument concerning the trial court's review of the Board's adjudication. He cites the case of *Belasco v. Board of Public Education of the School District of Pittsburgh*, 510 A.2d 337 (Pa. 1986), to support his proposition that the trial court should have reviewed the Board's action *de novo*. This argument is without merit. *Belasco* involved the termination of a teacher and was therefore governed by, *inter alia*, Section 1131 of the School Code, 25 P.S. §11-1131, which provides that in an appeal *brought by a professional employee* from the action of a school board, the *Secretary of Education* may hear and consider additional testimony if advisable. The issue in *Belasco* was whether the Secretary had appellate or *de novo* review where no additional testimony was taken. The *Belasco* court held that the Secretary is vested with the authority conduct *de novo* review whether he takes additional testimony or merely reviews the record of the proceedings before the board.

*Belasco* is distinguishable from the instant action because Appellant is a *nonprofessional employee*. Nonprofessional employees appeal a school board's action to a trial court pursuant to Section 752 of Local Agency Law, 2 Pa.C.S. §752. Section 754 of the Local Agency Law, 2 Pa.C.S. §754, addresses the disposition of such appeals and provides:

**(Footnote continued on next page…)**

12

We next address Appellant's challenge to his suspension. Appellant argues that he was suspended by the District's administrative staff "without any knowledge of the Board members and without any 'action' of the Board." Appellant's Brief at 31. In Appellant's view, his suspension was the equivalent of termination and he was, therefore, entitled to a hearing before his suspension occurred.

This Court recently resolved a similar claim in *Slater v. School District of Philadelphia*, 309 A.3d 1144 (Pa. Cmwlth. 2024) (*Slater*). In *Slater*, a tenured teacher (teacher) was involved in an altercation with middle school students. The school principal conducted an investigation of the incident by interviewing and taking signed statements from the teacher, two other teachers, and 19 students. The principal issued investigative results indicating that the teacher and two students engaged in a brief physical conflict which resulted in injuries to the students and the teacher. Two investigatory conferences followed, as well as a "204 Second-Level conference" conducted by a district official. Following the second-level conference, the district official recommended to the Board that the teacher's employment be

**(a) Incomplete record.--**In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

**(b) Complete record.--**In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

terminated. The district official further advised the teacher that he would be suspended without pay effective immediately pending final action of the Board. Following a Board resolution and a hearing before a hearing officer, the Board dismissed the teacher from his employment. On appeal, the Department of Education affirmed.

On appeal to this Court, teacher argued, *inter alia*, that "[the district official], a member of the [District's] administrative staff, had no authority to suspend his pay under the School Code without any knowledge or 'action' of the Board. [Teacher argued] that his suspension without pay was 'in effect' a termination of his employment." *Slater,* 309 A.3d at 1155. The *Slater* court soundly rejected this argument stating:

> Here, as in *Prieto* [*v. School District of Philadelphia (Department of Education)* (Pa. Cmwlth., No. 144 C.D. 2021, filed December 28, 2022), *appeal denied*, (Pa. No. 58 EAL 2023, filed August 22, 2023)], [teacher] was not terminated on [the date of the second-level conference summary], rather he was suspended without pay for cause as of that date. A suspension for cause without hearing is permissible where the teacher's conduct is potentially harmful to the safety of the children. . . .
>
> In this case, [teacher's] use of extreme physical force on several students and his inability to maintain classroom order would have allowed the [District] to suspend him without any type of investigatory hearing at all. However, the [District] went above and beyond in providing numerous opportunities for [teacher] to hear the allegations against him and to respond to them. No further process was required.

*Id.* at 1156. Citing *Prieto,* the court went on to note:

> Pennsylvania courts have long permitted suspensions pending dismissal for public employees, including

14

teachers. *See Burger v. Board of School Directors of McGuffey School District*, 839 A.2d [1055] (Pa. 2003) (upholding suspension without pay of school district superintendent in instance of serious charges of misconduct); *Kaplan* [*v. School District of Philadelphia*, 130 A.2d 672, 276 (Pa. 1957)] (permitting suspension without pay for a teacher pending dismissal); *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 592 A.2d 779, 783 (Pa. Cmwlth. 1991) (holding that a suspension without pay is not a *de facto* termination). In *Kaplan*, the Supreme Court stated that to 'allow compensation to a teacher who deliberately breaks the moral law which makes him unfit to teach[ ] would result in an absurd and unreasonable interpretation of the act.' 130 A.2d at 680 (internal citations omitted).

*Id.* at 1156-1157 (citing *Prieto*, slip. op. at 14-15).

Although *Slater*, and the majority of cases it cites, involve a tenured professional, the same rationale applies to Appellant. The safety of students is paramount. There is no question that Appellant's egregious actions in leaving J.G. at the Walmart and then leaving the School premises without permission constituted conduct harmful to the safety of a child. Based on the facts of this case, we conclude the District acted well within its powers and indisputably took appropriate steps in suspending Appellant from his employment without pay. Appellant's argument to the contrary holds no weight.[12]

---

[12] We also reject Appellant's argument that his suspension without a resolution of the Board violated the Sunshine Act. No Board resolution was necessary prior to Appellant's suspension. *See Lukacs v. Plum Borough* (Pa. Cmwlth., No. 1846 C.D. 2007, filed July 16, 2008) (holding there is no requirement in the Sunshine Act mandating a school board's public vote prior to the suspension of a school district business administrator). Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

Finally, we address whether substantial evidence support's the Board's decision to terminate Appellant's employment. We need not belabor this argument. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Rife v. Workers' Compensation Appeal Board (Whitetail Ski Co.)*, 812 A.2d 750, 754 (Pa. Cmwlth. 2002) (citing *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 572 A.2d 838 (Pa. Cmwlth. 1990)). It exists only when, upon examination of the whole record, including inferences therefrom, it is found to be such that a reasonable man might have reached this decision. *Id.*

Here, Appellant was not employed under the School Code as a professional employee; thus, pursuant to Section 514 of the School Code, 24 P.S. §5-515, the Board had the right to terminate his employment for "incompetency, intemperance, neglect of duty, violation of the school laws of this Commonwealth, or other improper conduct." The District need only establish a single charge to support a termination of Appellant's employment. *Metz v. Bethlehem Area School District*, 177 A.3d 384, 393 n.9 (Pa. Cmwlth. 2018).

Appellant reiterates his version of the facts in support of his contention that he was wrongly terminated. Appellant asserts that the Board failed to consider the "contributory negligence" of Teacher, Principal, and the District. In this regard, Appellant avers that Teacher's failure to take roll on the bus is what caused J.G. to be left behind. Appellant further intimates that the lack of professional development, training, or a "manual" somehow makes his conduct tolerable.

Clearly, Appellant's finger pointing will not excuse what occurred in this case. The record fully supports the conclusion that Appellant: was assigned to be J.G.'s one-to-one classroom assistant; left the vulnerable child behind at the Walmart;

16

failed to report the incident; and proceeded to leave School grounds without permission. Such neglectful, dangerous and inexcusable behavior cannot and should not be viewed as a "one-off" mistake. We conclude, without question, that substantial evidence supports the conclusion that Appellant's actions constituted sufficient grounds for his dismissal pursuant to Section 514 of the School Code.

## CONCLUSION

The trial court did not err in affirming the District's determination that Appellant should be terminated because, in a dereliction of his duties, he left his assigned nonverbal, intellectually disabled student behind during a class trip, failed to report the student missing, and left the School premises without permission. Such behavior plainly constitutes incompetency and neglect of duty under Section 514 of the School Code.

The order of the trial court is affirmed.

_____
MATTHEW S. WOLF, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of: Clarence Foster         :
                                    :   No. 1257 C.D. 2022
                                    :
From a Decision of:            :
School District of Philadelphia    :
Board of Education           :

# **O R D E R**

AND NOW, this 6th day of May, 2024, the order of the Court of Common Pleas of Philadelphia County entered on September 30, 2022, is AFFIRMED.

_____
MATTHEW S. WOLF, Judge