565 A.2d 1232

**CITY OF PHILADELPHIA, Appellant,**

v.

**FRATERNAL ORDER OF POLICE, LODGE NO. 5, Appellee.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1989.

Decided Nov. 2, 1989.

Reargument Denied Jan. 12, 1990.

Maria L. Petrillo, Chief Asst. City Sol., with her, Ralph J. Teti, Chief Deputy City Sol., and Richard C. McNeill, Jr., Philadelphia, for appellant.

Anthony J. Molloy, Jr., Mozenter, Molloy & Durst, Philadelphia, for appellee.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Before us for review is an order of the Court of Common Pleas of Philadelphia County which upheld an arbitrator's award directing that two members of the Philadelphia Police Department, John Wilson and David Grove, (Grievants), who had been dismissed from their positions, be subject only to suspensions of thirty days and ten days respectively.

The relevant facts are as follows. On May 28, 1987, then Police Commissioner Kevin M. Tucker dismissed Grievants from their positions on a variety of charges including the offense of conduct unbecoming an officer. The various charges related to Grievants' refusals to turn over arrest books to the Philadelphia Police Department (Department) and their failure to cooperate with the Department in an investigation being conducted by the Department's Ethics Accountability Division.

Pursuant to the collective bargaining agreement between the City of Philadelphia (City) and the Fraternal Order of Police Lodge No. 5 (FOP), Grievants filed grievances over the dismissals. The grievances were submitted to arbitration and the arbitrator sustained the grievances only in

part, finding that Grievants had violated only one section of the Disciplinary Code (Code) (failure to cooperate in a Departmental investigation) and specifically rejecting charges that Grievants had violated other sections of the Code. Accordingly, he reduced Grievant Wilson's dismissal to a thirty-day suspension and Grievant Grove's dismissal to a ten-day suspension.

Thereafter, the City filed a petition to vacate the arbitrator's award in the common pleas court asserting that the arbitrator had exceeded his jurisdiction when he determined that Grievants were guilty of some of the charges but, nonetheless, ordered reinstatement. The trial court denied the City's petition to vacate and this appeal followed.

Initially, we must determine the appropriate scope of review. The law regarding judicial review of an arbitration award has not been without its confusion. Essentially, there are three substantive groups which must be distinguished. Under the Public Employe Relations Act[1] (Act 195) there are public employees who are given a right to strike. There are also, however, under Act 195 a small segment of employees who are not given that right. We shall refer for purposes of this discussion to those individuals as Act 195 Special Employees. The Act 195 Special Employees include prison guards and court-appointed employees. *See* Section 805 of Act 195, 43 P.S. § 1101.805. Finally, there are those individuals (police and fire personnel) whose arbitration rights arise from the Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1 through 217.10 (Act 111). Further, for each of the three categories of public employees there are two types of arbitration—interest and grievance. And, the appropriate scope of review is dependent upon which group of employees is under discussion and what type of arbitration is involved.

## INTEREST ARBITRATION

■ Our Supreme Court has indicated that where an interest arbitration award arises under Act 111 a "narrow

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101 through 1101.2301.

certiorari" review is appropriate. *Appeal of Upper Providence Police Delaware County Lodge # 27 Fraternal Order of Police*, 514 Pa. 501, 526 A.2d 315 (1987). Under this standard the reviewing court must limit its inquiry to questions concerning the jurisdiction of the arbitrators, the regularity of the proceedings, an excess in the exercise of the arbitrators' powers, and constitutional questions. *Id.* This narrow scope of review is based upon the recognition that Act 111 employees have no right to strike, the consequent public policy concern that their disputes be quickly settled and appeals discouraged, and more importantly upon Section 7(a) of Act 111, 43 P.S. § 217.7(a), which pertinently directs: "The determination of the majority of the board of arbitration ... shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved.... No appeal therefrom shall be allowed to any court." 43 P.S. § 217.7(a). *See also Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969). Interpreting this statutory restriction on judicial review of an arbitration panel and pointing out that an arbitration panel is neither a court nor an administrative agency, our Supreme Court, citing *Keystone Raceway Corp. v. State Harness Racing Commission*, 405 Pa. 1, 5–6, 173 A.2d 97, 99 (1961), stated:

> If an appeal is prohibited by an Act, or the decision of the Agency is stated to be final or conclusive, the law is well settled that an appeal will lie to the Courts in the nature of a narrow certiorari and this Court will review only (1) the question of jurisdiction; (2) the regularity of the proceedings before the agency; (3) questions of excess in exercise of powers; and (4) constitutional questions....

*Washington Arbitration Case*, 436 Pa. at 174, 259 A.2d at 441.

As to the question of what scope of review applies to Act 195 and Act 195 Special Employees under an interest arbitration award, it appears that that inquiry has never been judicially determined and, of course, is not an issue now before us.

## GRIEVANCE ARBITRATION

■ When examining a grievance arbitration case under Act 195 it is clear that for most employees the proper inquiry is whether the award draws its essence from the collective bargaining agreement, *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), and that standard is akin to the one set forth in Section 7302(d)(2) of the Uniform Arbitration Act, 42 Pa. C.S. § 7302(d)(2)(UAA). Under this Section a reviewing court is permitted to modify or correct an arbitration award only where "the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict." *Community College.* *Community College* relied upon *United Steelworkers of America v. Enterprise Wheel and Car Corp*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), wherein the High Court observed:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of award.

*Id.* at 597, 80 S.Ct. at 1361. Our state Supreme Court has made it clear that the essence test is essentially the same as the judgment n.o.v. standard under the UAA, *Community College*,[2] when it wrote, "[w]hile introduction of the 'n.o.v.' concept into the field of arbitration may have been a new departure, it is hardly a radical change, nor does it dictate that a much closer or different scrutiny of an arbitration award will be available than under the [essence test]." *Id.,*

---

2. Although *Community College* was based upon the predecessor to the current UAA, *see* the Act of April 25, 1927, P.L. 381, *formerly* 5 P.S. §§ 161–179, *repealed by* Section 501(c) of the JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693, the two Acts are the same for our purposes.

473 Pa. at 589–90, 375 A.2d at 1273. The Court has further opined that subsumed within the essence test standard of review is a requirement that the arbitrator's award cannot be manifestly unreasonable. *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989) (*ISSU*).

Cases involving Act 195 Special Employees are subject to the same scope of review. *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988); *Philadelphia Housing Authority v. Union of Security Officers # 1,* 500 Pa. 213, 455 A.2d 625 (1983).

The instant case, of course, is a grievance proceeding arising under Act 111 and the appropriate scope of review here is narrow certiorari, not a review under the UAA. *Allegheny County Police Association v. County of Allegheny,* 100 Pa. Commonwealth Ct. 327, 514 A.2d 964 (1986); *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia,* 120 Pa. Commonwealth Ct. 610, 549 A.2d 1014 (1988) (*FOP 5*);[3] *City of Philadelphia v. Fraternal Order of Police Lodge No. 5,* —— Pa. Commonwealth Ct. ——, 558 A.2d 163 (1989) (*City of Philadelphia*).[4] In summary, the following diagram, we believe, represents the current state of the law on the scope of review over arbitration awards:

|  | Review Standard | |
|---|---|---|
|  | Grievance Arbitration | Interest Arbitration |
| Act 195 | UAA (Community College | Not Judicially Determined |
| Act 195–Special | UAA (Musser; Philadelphia Housing) | Not Judicially Determined |
| Act 111 | Narrow Certiorari (Allegheny County) | Narrow Certiorari (Upper Providence) |

## ARBITRATOR'S AUTHORITY

Keeping the appropriate standard of review in mind, we must now decide whether the arbitrator's award should

---

**3.** While we mentioned the essence test scope of review in *FOP 5,* it is clear that we actually applied the narrow certiorari standard in considering the appeal.

**4.** *See supra* n. 3.

be set aside on the basis that the arbitrator acted in excess of his powers because he modified the penalty imposed upon Grievants. Our review of the collective bargaining agreement reveals that nowhere therein is the question of the arbitrator's ability to substitute a penalty addressed.

Judge Palladino, in the *City of Philadelphia* case, in construing the identical contract provisions to those here under review and in considering the question of whether an arbitrator could change a dismissal to a suspension, wrote:

> The arbitrator essentially determined that mitigating factors as well as procedural errors could be considered in evaluating whether "just cause" for Grievant's discharge did or did not exist. Such a definition or standard of "just cause" amounts to, at most, *a mere error of law.* After careful review of the arbitrator's award in light of the above-referenced contract provisions as well as our limited scope of review of Act 111 arbitration cases, we cannot conclude that the arbitrator so exceeded the scope of the grievance submitted to him or the authority granted to him as to warrant reversal in this matter. Upper Providence Township.

*Id.* at ——, 558 A.2d at 165 (emphasis added). *Accord Upper Providence.* Thus, in *City of Philadelphia*, Judge Palladino concluded that under Act 111 if an arbitrator substitutes a suspension for a dismissal, such action, while perhaps an error of law, and therefore subject to judicial review and reversal under the UAA, is beyond this Court's power to correct because of our limited scope of review where the standard is narrow certiorari.[5]

Although we deem *City of Philadelphia* to be controlling here, we note that in *Benvignati v. Civil Service Commis-*

5. We note that in Judge Palladino's footnote 6 in *City of Philadelphia* she indicates that *Musser, Philadelphia Housing* and *ISSU* did not involve Act 111 employees. They did in fact involve Act 195 Special employees (*Musser, Philadelphia Housing*) and Act 195 employees (*ISSU*) and, hence, the UAA standard of review was correctly applied in those cases.

*sion,* 106 Pa. Commonwealth Ct. 643, 527 A.2d 1074, *petition for allowance of appeal denied,* 517 Pa. 600, 535 A.2d 1058 (1987), where the issue concerned modification of a disciplinary penalty imposed upon Philadelphia police officers *and the adjudicatory body was the Philadelphia Civil Service Commission,* the analysis was contrary to that employed here. The reason, however, for the disparate analyses can be explained by the difference in scope of review. Appeals from the Philadelphia Civil Service Commission are governed by Section 754 of the Local Agency Law, 2 Pa. C.S. § 754. That scope of review permits this Court to reverse on the basis of error of law, a result which we opined in *City of Philadelphia* we could not reach because our scope of review there was in the nature of narrow certiorari over the arbitrator's decision.

The rationale for *Benvignati* had previously been expressed in *Omelchenko v. Housing Authority of the County of Lebanon,* 58 Pa. Commonwealth Ct. 494, 428 A.2d 274 (1981), a case involving an appeal from the State Civil Service Commission [6] where the scope of review also includes error of law.[7] In *Omelchenko* the Court wrote:

'[T]he Commission has no authority to order a suspension in lieu of a dismissal.' If the charges on which a removal is based relate to the merits of the employee's work performance and if the charges are supported by the Commission's own findings, the Commission must uphold the appointing authority's disciplinary action. *Only if the charges are not made out, may the Commission modify the appointing authority's action by reinstating the employee—with or without backpay.*

The Civil Service Commission's duty in this case was to make the record, find the facts and determine as a matter of law whether its findings require the conclusion that the employee was removed for just cause. Having, as it

6. The county came within the province of the State Civil Service Act pursuant to a contract agreement. *See* 4 Pa.Code § 93.8.

7. The State Civil Service Commission's adjudications are reviewed under Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

did, made findings that Ms. Omelchenko had done the things charged, the Commission's duty was simply to apply the law, that is, to decide whether the charges and the findings describe matters which are just cause for removal.

*Id.,* 58 Pa.Commonwealth Ct. at 497, 428 A.2d at 275–76 (citations omitted and emphasis added).[8] This reasoning was adopted in *Benvignati.*[9]

Having touched upon civil service case law, we feel obligated to point out that an argument could be made that the substantive law to be applied to this case should be civil service law, *i.e.,* the *Benvignati* rule rather than Act 111 law, *i.e.,* the *City of Philadelphia* rule. This argument would be premised upon the fact that the following language appears in the collective bargaining agreement. "No employee shall be disciplined or discharged except as is consistent with the Home Rule Charter and the Regulations of the Civil Service Commission." Additionally, under a section marked "Scope of Agreement" the collective bargaining agreement provides:

The parties have included herein certain provisions that have arisen by virtue of Act 111 awards in negotiations and also provisions contained in current civil service regulations that were not mandated by Act 111 awards or negotiations. The inclusion of these Civil Service Regula-

8. We are aware that substituting a suspension for a dismissal on the one hand, and reinstating without full backpay on the other hand may appear to be the same thing. Nonetheless, the former is not permitted while the latter is inasmuch as dismissal (not individual charges) "shall be for just cause only." Section 7.7–303 of the Philadelphia Home Rule Charter, 351 Pa.Code, 7.7–303. *Accord* Section 807 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.807. *See also Omelchenko; Benvignati.* There may be an important distinction where progressive discipline is called for. We note that we have held that reinstatement without backpay is not an impermissible suspension. *See Corley v. Department of Public Welfare,* 93 Pa. Commonwealth Ct. 639, 502 A.2d 768 (1985) (state civil service case).

9. We are aware that in *Harris Appeal,* 91 Pa. Commonwealth Ct. 47, 496 A.2d 891 (1985), we used language which could be viewed as allowing the Philadelphia Civil Service Commission to substitute a suspension for a dismissal. Close reading of that case, however, will demonstrate that what we affirmed, in actuality, was a partial denial of backpay.

tions is for the purpose of providing a more complete and lucid document and is *not intended to abridge in any way the right of the City under the Home Rule Charter to manage its employees and to effect changes in personnel matters*, including the right of the Civil Service Commission to amend any Civil Service Regulations consistent with the City's obligations under the requirement of the Act 111. (Emphasis added.) [10]

But even if civil service law controls the substantive law, it does not control a court's scope of review. The parties have elected to pursue an arbitration route under Act 111. They are thus locked into the narrow certiorari scope of review. This fact is what produces what might otherwise be viewed as inconsistent caselaw. Phrased differently, impermissible penalty substitution may be "contrary to law" and grounds for reversal under the UAA, the Administrative Agency Law and the Local Agency Law, but it is *not* an act in excess of the arbitrator's powers which would warrant reversal under the narrow certiorari standard. *See City of Philadelphia.*

As the preceding analysis demonstrates, the result in a particular case may well depend upon the forum in which one chooses to litigate and the practicing bar should take note.

Based upon the foregoing discussion, the order of the trial court is affirmed.

## ORDER

NOW, November 2, 1989, the order of the Court of Common Pleas of Philadelphia in the above-captioned matter is hereby affirmed.

---

10. Our review of Section 7.7-201 of the Philadelphia Home Rule Charter, pertaining to appeal to the Philadelphia Civil Service Commission, reveals that the question of whether the Commission can substitute a suspension for a dismissal is not therein addressed.