634 A.2d 800

**CITY OF PHILADELPHIA, Appellant,**

v.

**FRATERNAL ORDER OF POLICE, LODGE NO. 5, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1991.

Decided Nov. 30, 1993.

Rehearing Denied Jan. 12, 1994.

274

Richard G. Freeman, for appellant.

John K. Weston, for appellee.

Before DOYLE, COLINS and PELLEGRINI, JJ.

PELLEGRINI, Judge.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County affirming an award of an arbitrator reinstating Gary Wakshul (Grievant) as an officer with the Philadelphia Police Department.[1]

1. This opinion was reassigned to the author on May 11, 1993.

On December 7, 1985, Grievant arrested two individuals and transported them to a police station. One of those two prisoners suffered injuries as a result of a physical confrontation with Grievant while being placed in a cell. This prisoner was then taken by Grievant to a local hospital. While the admission clerk was taking information from the prisoner, a second physical confrontation occurred.

Grievant was summoned to the Internal Affairs Division of the Police Department on April 29, 1986, with counsel, and was read his constitutional rights under *Miranda*.[2] On the advice of his counsel, Grievant refused to give a statement.

On May 28, 1986, a warrant for the arrest of Grievant was obtained based on a complaint alleging aggravated assault, simple assault and other charges.[3] On the same day, Grievant was served with a "Notice of Suspension" which provided: "You are hereby notified by Order of the Police Commissioner that effective immediately, you are suspended for a period of thirty (30) days with Intent to Dismiss." On May 29, 1986, the Fraternal Order of Police, Lodge No. 5 (FOP) filed a grievance protesting the suspension and contemplated dismissal of Grievant.

Thereafter, Grievant was served with "Notice of Intention to Dismiss."[4] The notice, signed by the Police Commissioner, listed conduct unbecoming a police officer and neglect of duty as the reasons for the dismissal. The notice recounted the incident involving the prisoner which occurred on December 7, 1985, and further provided in pertinent part:

Although your dismissal is based on the aforementioned substantive acts, on Wednesday, May 28, 1986, you were also arrested inside [Internal Affairs Bureau] Headquarters

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Grievant was ultimately acquitted of the criminal charges on June 2, 1987, following a two-day trial by a judge sitting without a jury. (R.R. 507a.)

4. Although the notice was prepared on June 6, 1986, according to a handwritten notation, it was served upon Grievant on June 7, 1986.

and charged with Aggravated Assault, Simple Assault and Criminal Attempt.

The aforementioned conduct indicates you violated Police Department Orders and Directives and show little or no regard for your responsibilities as a member of the Philadelphia Police Department.

You are hereby notified that for the same reasons you were suspended without pay from your position effective at the beginning of your tour of duty on May 28, 1986, for thirty days, or until your prior dismissal.

The form also advised Grievant that if he believed that "this intended action is unjustified, you may, under regulations of the Civil Service Commission, within ten days from the service of this notice, notify [the Police Commissioner] in writing of your reasons therefor and summarize the facts in support of your belief." Grievant was sent the Notice of Dismissal on June 16, 1986.

Arbitration proceedings commenced on April 21, 1988. The sole issue to be decided as framed by the arbitrator was: *"Was Grievant discharged for just cause and in accordance with the requirements of the parties' Agreement."* [5] On July 31, 1989, the arbitrator issued his opinion and award. The arbitrator first noted that "[t]he parties' Agreement, the [Philadelphia] Home Rule Charter, referenced therein,. and the Civil Service Regulation issued to implement the procedure for dismissal, all provide for notice and an opportunity to reply." The arbitrator found that the dismissal of Grievant was defective because it violated Grievant's "contractual due process rights" by precluding notice and an opportunity to reply. Specifically, the arbitrator observed that because Grievant's arrest preceded his suspension and dismissal, his exercise of his right against self-incrimination precluded him from offering an explanation for his conduct. *See generally Cleveland Board of Education v. Loudermill,* 470 U.S. 532,

---

5. The parties agree that the only issue before the arbitrator was whether or not Grievant was "terminated for just cause." City's Brief at 4; R.R. 6a.

105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).[6] Accordingly, the arbitrator directed that Grievant be reinstated with back pay.

The arbitrator additionally considered the merits of the grievance, and issued an award on that basis which was to be applicable only if the arbitrator's decision that Grievant's due process rights were violated was reversed. The arbitrator found that Grievant's actions at the hospital on December 7, 1985, constituted an excessive use of force, but that this was a first violation of Section 1.75 of the Disciplinary Code of the City Police Department.[7] Accordingly, the arbitrator found that a 30–day suspension was warranted.

The City petitioned the Court of Common Pleas of Philadelphia County to vacate, set aside or modify the arbitration award. By order entered July 31, 1990, the Common Pleas Court denied the City's petition and confirmed the arbitrator's award. The City then filed this appeal.

On appeal, the City raises two issues: (1) that the arbitrator exceeded his authority by deciding a constitutional issue; and (2) that the arbitrator erred when he, after finding just cause, substituted a lesser penalty. Both the City of Philadelphia and the FOP set forth the essence test as the appropriate standard of review of the arbitrator's decision. We must first determine the proper standard of review of the arbitrator's decision of the agreement between the parties negotiated under Act 111.[8]

6. In *Loudermill,* the Supreme Court held that a public employee with a property interest in his job is entitled to a pre-termination opportunity to be heard, coupled with post-termination administrative procedures.

7. Section 1.75 specifies the appropriate punishment for "[r]epeated violations of departmental rules and regulations, and/or any other course of conduct indicating that a member has little or no regard for his responsibility as a member of the Police Department." For a first violation of this Section, the punishment range imposed by the City is from a thirty (30) day suspension to dismissal. The arbitrator noted that Grievant had been counseled before for physical and verbal abuse of prisoners.

8. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 applies only to police and fire personnel.

■ Previously, our case law has applied the "narrow certiorari" standard of review to appeals of Act 111 grievance arbitration. *See City of Philadelphia v. FOP Lodge No. 5 (Wilson)*, 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989). However, we have recently decided that the proper standard of review is the one provided for in the Uniform Arbitration Act (UAA), 42 Pa.C.S. § 7302(d), or the "essence" test. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Trooper James Betancourt)*, 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993). In that case, we recognized that Act 111 does not provide for grievance arbitration, but grievance arbitration is appropriate in Act 111 cases under the provisions of the UAA. *See Township of Moon v. Police Officers of Moon Tp.*, 508 Pa. 495, 498 A.2d 1305 (1985). Because the source of the authorization for police and fire grievance arbitration is the UAA, the standard of review that should be applied should also have its source in the UAA.[9]

■ The "essence test", as it has been formulated in our case law, requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute, and, if so, the validity of the arbitrator's interpretation is not a matter of concern to the court. *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981); *Joint*

---

**9.** The standard set forth in the UAA for grievance arbitration provides:
(1) Paragraph (2) shall be applicable where:
(i) The Commonwealth government submits a controversy to arbitration;
(ii) A political subdivision submits a controversy with an employee or a representative of employees to arbitration;
(iii) Any person has been required by law to submit or to agree to submit a controversy to arbitration pursuant to this subchapter.
(2) Where this paragraph is applicable, a court, in reviewing an arbitration award pursuant to this subchapter, shall, notwithstanding any other provision of this subchapter, *modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury, the court would have entered a different judgment or a judgment notwithstanding the verdict.*
42 Pa.C.S. § 7302(d) (emphasis added). Even after the enactment of the UAA, with its "n.o.v." standard, the case law has continued to apply the essence test, viewing the two standards as essentially the same. *FOP Lodge No. 5 (Wilson)*, 129 Pa.Commonwealth Ct. at 396, 565 A.2d at 1235.

*Bargaining Committee of the Pennsylvania Social Services Union v. Commonwealth,* 81 Pa.Commonwealth Ct. 126, 472 A.2d 1194 (1984). Therefore, on judicial review, an arbitration award should be upheld if the award "draws its essence from the collective bargaining agreement." *Leechburg,* 492 Pa. at 520, 424 A.2d at 1309. Within the essence test standard is a requirement that the arbitrator's award cannot be manifestly unreasonable. *FOP Lodge No. 5 (Wilson),* 129 Pa.Commonwealth Ct. at 397, 565 A.2d at 1235.

## I.

In this case, the arbitrator sustained the grievance, not because he found Grievant not guilty of the alleged conduct, but because he was deprived of something called "contractual due process". Although the arbitrator stated that his determination was based on "contractual" due process, he addressed the notice and opportunity to be heard as a constitutional issue and found a right to a pre-termination hearing. However, the Third Circuit in *Gniotek v. City of Philadelphia,* 808 F.2d 241 (3rd Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987), 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987), and this court in *City of Philadelphia v. FOP Lodge No. 5 (Boykins),* 140 Pa.Commonwealth Ct. 235, 592 A.2d 779 (1991) *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991), upheld the constitutionality of post-termination hearing procedures, like those available to Grievant in this case, finding that no formal pre-termination hearing was required.[10]

In *Gniotek,* police officers who were accused of accepting unlawful bribes were suspended and then given notice of intention to dismiss. The Circuit Court held that the notice of intention to dismiss sufficiently stated the charges against the officers and were timely, considering the governmental interest in quickly removing an unsatisfactory employee, and the

---

10. Also in *FOP Lodge No. 5 (Boykins),* where the agreement incorporated only the Home Rule Charter and the regulations of the Civil Service Commission, as it does here, we held that the arbitrator exceeded his authority in ruling on the constitutional issues.

10–day response time was sufficient opportunity to respond. *Id.*, 808 F.2d at 244–45. The Circuit Court stated that coupled with a post-termination adjudication, the pre-termination proceedings were proper.

In *FOP Lodge No. 5 (Boykins)*, the officer was arrested for aggravated assault and other charges and read his *Miranda* warnings. The officer chose to assert his privilege against self-incrimination. He was subsequently suspended with the intent to dismiss and notified that he could contact the police commissioner in writing of his reasons for objecting to the disciplinary action. The arbitrator found that the officer's due process rights were violated. Applying *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), we held that "given the City's substantial countervailing interest in protecting the public from improper police conduct, the procedure used to suspend a police officer pending further action by the Police Commissioner satisfies due process and obviates the need for a full-blown pre-suspension hearing." *FOP Lodge No. 5 (Boykins)*, 140 Pa.Commonwealth Ct. at 245, 592 A.2d at 785. *See also City of Philadelphia v. FOP Lodge No. 5 (Pittman)*, 138 Pa.Commonwealth Ct. 219, 587 A.2d 860 (1991) (formal notice of the intent to dismiss provided sufficient notice of the charges against the police officer and an opportunity to reply to the charges); *City of Philadelphia v. FOP Lodge No. 5 (Murphy)*, 132 Pa.Commonwealth Ct. 352, 572 A.2d 1298 (1990) (although not afforded a full evidentiary hearing, pre-termination notice of the intention to dismiss with an opportunity to respond provided the police officer appropriate procedural due process under *Loudermill* ).

▮▮▮▮ The arbitrator's decision that Grievant's contractual due process rights were violated was not rationally derived from the essence of the collective bargaining agreement because the agreement did not contain any provisions creating any "contractual due process". Any reliance on constitutional due process violations was an error of law because Grievant was afforded the same procedures, under the Civil Service regulations that were afforded the employees in *Gniotek* and *FOP Lodge No. 5 (Boykins)*, including a notice that stated

specifically the alleged conduct, and the process was held to comply with constitutional due process.

## II.

Having determined that the arbitrator erred in sustaining the grievance on due process grounds, we must address whether the arbitrator had the power to substitute a lesser penalty after finding that the charged conduct occurred, keeping in mind that the appropriate standard of review is the UAA or essence test. Whether the arbitrator has that power is determined, absent any statutory requirement, by what the parties agreed to in the collective bargaining agreement.

The collective bargaining agreement incorporates the provisions of the Home Rule Charter and the Civil Service Regulations. The Agreement states in Article II, entitled Scope of Agreement, that the Civil Service regulations made part of the Agreement are "for the purpose of providing a more complete and lucid document and is not intended to abridge in any way the right of the City under the Home Rule Charter to manage its employees and to effect changes in all personnel matters ...". Section A, Article XVIII of the collective bargaining agreement states that "no employee shall be disciplined or discharged except as is consistent with the Home Rule Charter and the Regulations of the Civil Service Commission." Article XVIII(A). Through this provision, Section 7.7–201 of the Philadelphia Home Rule Charter, 351 Pa.Code 7.7–201, was incorporated into the Agreement. This section provides that in hearing an appeal of an employee who was dismissed, if the Commission sustains the appeal, it can choose the reinstatement position and pay to be awarded, but "[I]f the Commission overrules the appeal of the employee, *it shall confirm the action of the appointing authority* ...". (Emphasis added).[11]

11. The court in *FOP Lodge No. 5 (Wilson)* stated in dicta that if we were applying the essence test, we would find that the arbitrator's substitution of a lesser penalty was contrary to law based on the substantive civil service law. *FOP Lodge No. 5 (Wilson)*, 129 Pa.Commonwealth Ct. at 401, 565 A.2d at 1237.

█ The arbitrator in this instance found that Grievant's acts at the hospital constituted excessive use of force under the collective bargaining agreement as charged by the City. Once having found that the charged conduct occurred, there was just cause for the penalty chosen by the City under their Disciplinary Code, which allowed it to impose discipline up to dismissal.[12] The arbitrator, under the incorporated Civil Service law, is not permitted to alter the penalty imposed by the City once the conduct relied on as just cause is found and was required to affirm the City's decision to discharge Grievant. Because the Agreement requires the arbitrator to confirm the City's action once just cause is found, under the "essence test" standard of review, his attempt to alter the penalty was an error of law and cannot rationally flow from the essence of the bargaining agreement. *See also Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948, 952 (1989); *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988).

Accordingly, the order of the Court of Common Pleas of Philadelphia County affirming the award of the arbitrator is reversed and the discharge of Grievant is reinstated.

### ORDER

AND NOW, this 30th day of November, 1993, the order of the Court of Common Pleas of Philadelphia County, dated July 31, 1990, No. 5426, is reversed, and the discharge imposed by Appellant is reinstated.

DOYLE, Judge, dissenting.

I respectfully dissent on several grounds.

Of major concern is my disagreement with the majority's reevaluation of the standard of judicial review over Act 111[1] grievance arbitration awards. The reasons for my disagreement over this issue have already been expressed in my dissent in *Pennsylvania State Police v. Pennsylvania State*

**12.** *See* fn. 7.

**1.** Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

*Troopers' Association (Betancourt)*, 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993), and further elaboration here is not necessary.

Beyond that, however, I strongly disagree with other portions of the majority opinion, the first over the City's argument that the arbitrator exceeded his authority by deciding a constitutional issue.

In that section of the arbitrator's award discussing procedural issues, the arbitrator refers to the Grievant's "due process rights," which could mean rights which would be based on constitutional provisions. Later in this section, however, the arbitrator refers to the Grievant's "contractual due process rights," which in that context must mean rights which arise from the provisions of the collective bargaining agreement (CBA), *i.e.,* the "contract," and through it the Philadelphia Home Rule Charter and the Civil Service Regulations. Thus, by the imprecise use of these terms the arbitrator has created confusion over the basis of his decision.

Clearly, the arbitrator would not have the authority to determine whether the Grievant's constitutional rights had been violated. *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 140 Pa.Commonwealth Ct. 235, 592 A.2d 779, *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991) (*Boykins* ). But that is not what occurred here, and *Boykins* is distinguishable from the facts in the appeal now before us.

In *Boykins,* the **only** issue submitted to the arbitrator was whether the City complied with the suspension and dismissal procedures set forth in the Philadelphia Home Rule Charter and the Philadelphia Civil Service Regulations, which were incorporated by reference into the City's collective bargaining agreement with the FOP. Despite that, the arbitrator found that Boykins' suspension and placement into custody without a prior opportunity for a hearing on the departmental charges violated Boykins' **constitutional** due process rights and he reinstated Boykins with back pay.

The Court of Common Pleas of Philadelphia County affirmed the arbitrator's award and the City then appealed to this Court, arguing that the arbitrator exceeded his authority in ruling on the constitutional question of whether the City violated Boykins' due process rights. This Court agreed and Judge Pellegrini wrote:

[T]he collective bargaining agreement limits the arbitrator's authority to determining whether the City was in compliance with the Charter and the Regulations, and not whether the City has violated any constitutional rights. Because the arbitrator in the present appeal did not rule on whether the City complied with the suspension and dismissal procedures set forth in the collective bargaining agreement, but instead ruled on the due process issue raised by the FOP, an issue that was not before the arbitrator in the bifurcated arbitration proceeding, the arbitrator exceeded his authority under the collective bargaining agreement. Accordingly, the trial court should have vacated the arbitration award.

*Boykins*, 140 Pa.Commonwealth Ct. at 241, 592 A.2d at 782 (footnote omitted).[2]

*Boykins*, then, is distinguishable from the instant case and is not controlling because here, by any fair reading of the arbitrator's entire decision, it is obvious that the arbitrator grounded his interpretation of the rights afforded to Grievant on the notice provisions of the CBA, the Charter and the Regulations, and *not* on the Constitution, and in fact the arbitrator quoted from a then recent opinion of this Court, *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 125 Pa.Commonwealth Ct. 625, 558 A.2d 163 (1989) (*Young* ) as authority for his decision.

In *Young*, the arbitrator framed the issue as, "[w]hether Angela Young was discharged for just cause? If not, what shall the remedy be?" *Id.* at 627 n. 2, 558 A.2d at 164 n. 2.

---

**2.** This Court then went further and determined that Boykins was afforded the procedural protections mandated by the Due Process Clause and that the City did not violate his constitutional rights by suspending him prior to notification of the departmental charges and opportunity to respond to the charges.

The essential underlying facts in *Young* are identical to the essential underlying facts in this appeal, and the identical issue was raised there that is raised here: was the grievant afforded "contractual due process." The arbitrator there, as here, answered that question in the negative and found that there had been such violations. Based on such a finding the arbitrator there, as here, concluded that "just cause did **NOT** exist for Grievant's discharge." *Id.* at 630, 558 A.2d at 165.[3] Judge Palladino in *Young* incisively reviewed the award and wrote:

> The arbitrator essentially determined that mitigating factors **as well as procedural errors** could be considered in evaluating whether "just cause" for Grievant's discharge did or did not exist. (Emphasis added.)

*Id.*

It was this very language from *Young* which the arbitrator quoted in his decision at page 15. Moreover, the arbitrator here, as if to reinforce the mitigating factors beyond the "contractual due process" violations, further stated that if his decision was reversed on the "contractual due process" grounds, the Grievant was *still* not discharged for just cause. One must conclude, therefore, that the instant case is analogous to *Young*, not to *Boykins*, and that *Young* is controlling with respect to this issue.

> Next, I take issue with the majority's statement that:
> Once having found that the charged conduct occurred, there was just cause for the penalty chosen by the City under their Disciplinary Code, which allowed it to impose discipline up to dismissal. The arbitrator, under the incorporated Civil Service law, is not permitted to alter the penalty imposed by the City once the conduct relied on as just cause is found and was required to affirm the City's decision to discharge Grievant. Because the Agreement requires the arbitrator to confirm the City's action once just cause is found, under the 'essence test' standard of review, his

**3.** The arbitrator concluded: "The suspension and dismissal of Grievant . . . was not based on just cause and is nullified because it denied Grievant due process when it denied Grievant notice and an opportunity to reply."

attempt to alter the penalty was an error of law and cannot rationally flow from the essence of the bargaining agreement.

(Majority opinion at p. 282, footnote omitted).

I maintain that the arbitrator decidedly should not review the issues placed before him under the "Civil Service law" because (a) the Civil Service law was never incorporated into the collective bargaining agreement in this respect and (b) if such were the case, why bother to arbitrate the grievance; why not simply use the available civil service disciplinary procedures already in existence? The pertinent terms of the CBA with respect to the City Charter and Civil Service Regulations are as follows:

XIX. *GRIEVANCE AND ARBITRATION PROCEDURE*
   A. *Definition*

   . . . .

   6. Discipline cases may be grieved **or** submitted to Civil Service at the election of the employee, to the extent that the Civil Service Commission has jurisdiction.

   . . . .

D. *Election of Remedies*
   The remedy set forth herein is provided as an **alternative** to the procedures set forth in Civil Service Regulations and the Home Rule Charter. Should an employee elect an avenue of redress other than the procedure contained herein, he/she shall waive the contractual right to pursue a grievance through this procedure, and in no event shall the matter be arbitrable. Should an employee elect to pursue the matter through the procedure contained herein, he/she shall waive the right to pursue the matter through the procedures provided by the Civil Service Regulations and the Philadelphia Home Rule Charter. The decision of an arbitrator shall be final and binding on all parties and the employee and/or FOP shall not pursue any other avenue of redress. (Emphasis added.)

The above language demonstrates, in my view, a "clear bright line" distinction between civil service disciplinary proce-

dures on the one hand and dispute resolution by arbitration on the other. These differences were fully explored and explained in *City of Philadelphia v. FOP Lodge No. 5*, 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989) (*Wilson*). Arbitration is, in the words of the CBA, the "**alternative** to the procedures set forth in [the] Civil Service Regulations." I would further maintain that that distinction encompasses fundamental differences that center precisely on the standard that an Act 111 arbitrator first applies, and, thereafter, the judicial standard of review that this Court applies to an appeal, *i.e.*, narrow certiorari vs. the "manifestly unreasonable" or essence test.[4] Nowhere is that fundamental difference better illustrated than here, where the arbitrator found that "the grievant, Gary Wakshul, **was not** discharged for just cause" (Award, 3(a)), while this Court applies its "own brand of industrial justice"[5] and ever widening scope of judicial review and has itself determined that "once having found that the charged conduct occurred, there **was** just cause for the penalty chosen by the City."

---

4. At oral argument, the City conceded that the scope of review is in the nature of narrow certiorari and not the essence test as argued in its brief.

5. *See United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).