635 A.2d 727

**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 1803, Appellant,**

v.

**CITY OF READING, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 19, 1991.

Decided Dec. 23, 1993.

Stephen C. Richman, for appellant.

Karl A. Fritton, for appellee.

Before CRAIG, President Judge, McGINLEY, J. (P.), and NARICK, Senior Judge.

CRAIG, President Judge.

The International Association of Fire Fighters, Local 1803 (union),[1] appeals a decision of Judge Thomas J. Eshelman of the Court of Common Pleas of Berks County, which granted summary judgment to the City of Reading on its petition to vacate an April 11, 1988 grievance arbitration award. This case involves a grievance the union filed against the city to protest the appointment of Dolores Lorah to the position of fire marshal. The union asserts that the position is one that must be filled in accordance with the collective bargaining

1. The union firefighters are public employees whose arbitration rights arise under the Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10, commonly known as Act 111.

agreement between the union and the city. The city asserts that the right to appoint a person to the position is vested by statute in the mayor of the city.

### History of Case

The facts as determined by the arbitration panel are as follows. The mayor appointed the city's first fire marshal in approximately 1965. The city created a Bureau of Fire in 1968–69 and negotiated the first collective bargaining agreement with the union in 1969. In 1974, the city transferred the position of fire marshal from the Bureau of Fire to the Department of Parks and Public Property. In 1977 the city and union entered into an agreement known as the "Hawman–Hildebrand" agreement which created a method for promoting personnel within a Fire Prevention Bureau, if the city established such a bureau.[2]

The record does not clearly establish the exact date upon which the city created the Fire Prevention Bureau; however, a Reading Fire Department order dated April 15, 1987, indicates that the city adopted an ordinance on March 26, 1980, Bill # 9, which provided that the fire marshal would be responsible for the operation of the fire prevention bureau.

On December 22, 1977, Dolores Lorah was promoted to the position of fire inspector and on March 19, 1986, Lorah was promoted to the position of lieutenant, Fire Prevention Officer. The union filed a grievance against the second promotion, and an arbitrator determined that the promotion constituted a violation of the Hawman–Hildebrand agreement. Thus, Lorah's position reverted to fire inspector.

The city abolished the Fire Prevention Bureau on December 31, 1986, apparently for budgetary reasons. Lorah and the bureau's other fire inspector were suspended on that date. On the same date the city adopted an ordinance, Bill No. 101–86, that reconstituted the functions of that bureau. By an ordinance, Bill No. 112–86, which became effective on January

---

2. Paragraph 13 of the agreement specifically states that the city, by signing the agreement, was not committing itself to the creation of a fire prevention bureau.

1, 1987, the mayor, with the approval of city council, appointed Lorah to the position of fire marshal. The ordinance also directed that Lorah would report to the Director of Public Safety.

The arbitration panel upheld the union's grievance. The panel concluded that the parties had incorporated the Hawman–Hildebrand agreement into their collective bargaining agreement, and that the Hawman–Hildebrand agreement prevented the mayor from appointing a fire inspector to the position of fire marshal. In making this determination, the arbitration panel specifically relied upon Section 8 of the Hawman–Hildebrand agreement, which provides:

8. It is agreed that the rank of Fire Inspector is (1) step (at this time) below the rank of Fire Driver title and for promotion purposes, to the ranks of Lt. Training Officer, Lt. Fire Prevention Officer and 2nd Deputy Chief *or any other paid ranks that may be created in the future*, they shall and will not be eligible. (Emphasis added.)

In the arbitration panel's opinion, the position of fire marshal was a "paid [rank] that may be created in the future," and thus not a position for which Lorah is eligible.

The city appealed the arbitration panel's award to the trial court, and filed a motion for summary judgment.

The trial court granted the city's motion and vacated the arbitration award. The trial court held that the panel erred in its award because the award impaired the mayor's statutory right under section 2104 of The Third Class City Code[3] to appoint fire marshals. Section 2104 provides in pertinent part:

Every city may, by ordinance, provide for the creation of the office of fire marshal who shall be appointed by the mayor, by and with the approval and consent of council, biennially.

Based on this provision, the trial court concluded that the arbitration panel erred in reading into the Hawman–Hilde-

3. Act of June 24, 1931, P.L. 932, *as amended*, 53 P.S. § 37104.

brand agreement a restriction on the mayor's power to select a fire marshal.

The trial court further concluded that the provisions of the Code applicable to the fire department, such as section 2104, had not been implicitly repealed by what is commonly referred to as the Firemen's Civil Service Act[4], as the union asserted. In that regard, the court noted that the Code had been amended in 1951, eighteen years after the Firemen's Civil Service Act was enacted, and that, at the time the Code was amended, the power of the mayor to appoint a fire marshal was not in any way modified. The trial court also noted that the position of fire chief and fire marshal are nearly identical under the Code. The trial court stated:

> [n]ot only is the 'Fire Marshal subject to appointment and removal ... as is the Chief of the Fire Department,' 53 P.S. § 37104, but the Code also makes the Fire Chief the ex-officio Fire Marshal in the absence of an appointed Fire Marshal. 53 P.S. § 37107. *City of Reading v. International Association of Fire Fighters, Local 1803* (No. 311 April 1988 AD, filed June 12, 1991), slip op. at 9.

For these reasons, the trial court concluded that, as a matter of law, the arbitration panel's award should be vacated, and granted the city's motion for summary judgment.

### *Issues*

In this appeal, the union raises the following issues: (1) whether the trial court erred in applying the essence test standard of review to the arbitration panel's decision; (2) whether the trial court erred by substituting its interpretation of the Hawman–Hildebrand agreement; and (3) whether the

---

4. Act of May 31, 1933, P.L. 1108, *as amended,* 53 P.S. §§ 39861–39877. Section 17 of the Act, 53 P.S. § 39877, the Act's repealer provision states in pertinent part that

> All acts and parts of acts, general, special or local, inconsistent with this act are hereby repealed. It is the purpose of this act to furnish a complete and exclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers, firemen, or other employees of fire departments ... in all cities of the ... third class wherein such officers and employees are paid.

trial court erred by allowing the city to disregard the collective bargaining agreement provisions regarding promotions.

The union argues that the arbitration panel was correct in holding that, under the Hawman–Hildebrand agreement, the city bargained away its right under the Code to appoint a fire marshal.

The city, on the other hand, contends that the trial court was correct in vacating the arbitration award, asserting that the arbitration panel exceeded its authority in directing the city to rescind its appointment of Lorah to the position of fire marshal. The city argues that it never bargained away its legislative right to appoint a fire marshal.

## Standard of Review

This court recently held that the proper standard of review of grievance awards, where Act 111 employees are involved, as here, is the essence test. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Trooper James Betancourt)*, 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993).

In applying the essence test, courts must review an arbitrator's decision to determine whether the award "draws its essence from the collective bargaining agreement." *Fraternal Order of Police Lodge No. 5 (Wilson)*, 129 Pa.Commonwealth Ct. 392, 396, 565 A.2d 1232, 1234.

In *Betancourt*, Judge Pellegrini noted that when an arbitrator has been required to determine the intent of the parties in drafting a collective bargaining agreement—a factual determination—courts should not disturb the arbitrator's decision if the interpretation is rational in light of the language of the agreement, the content and any other indication of the parties' intent. Slip opinion at 6.

Courts must determine whether the collective bargaining agreement "encompasses the subject matter of the dispute." Judge Pellegrini also noted that the essence test has been modified under the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7320, by allowing courts in reviewing an arbitrator's award to consider whether "the award is contrary to law and

is such that had it been a verdict of a jury the court would have entered a different judgment notwithstanding the verdict." 42 Pa.C.S. § 7302(d)(2).

## Analysis

The union asserts that the position of fire marshal is a bargaining unit position, and the bargaining agreement would make no sense if interpreted to mean that a fire inspector could not be promoted to a position in the ranks between fire inspector and fire marshal, but could be promoted to the position of fire marshal.

Additionally, the union argues that the Firemen's Civil Service Act prohibits the promotion of Lorah to the position of fire marshal because section 17 of the Act indicates that the Act is the exclusive system to be used for promotions and appointments. The union contends that the Act replaced provisions of the Third Class City Code that relate to the hiring, appointment and promotion of personnel in third class city fire departments.

The union relies upon this court's decision in *Brookman v. Johns*, 45 Pa.Commonwealth Ct. 629, 405 A.2d 1081 (1979), in which this court held that the Firemen's Civil Service Act repealed and superseded provisions of the Third Class City Code, relating to the dismissal of firemen, that were inconsistent with the Act. However, in *Brookman*, the court only held that the Act established the exclusive means of reducing the number of persons on a fire department force.

The trial court in the present case noted, "the civil service provisions of the Act do not include the Fire Marshal and the provisions of the Third Class City Code specifically exempt the Fire Marshal from civil service and for purposes of appointment and removal, treat the Fire Marshal the same as the Fire Chief." Slip opinion at p. 10.

Section 1 of the Firemen's Civil Service Act provides as follows:

On and after the first day of July, one thousand nine hundred and thirty-three, appointments to, and promotions

in, all paid fire departments or as fire alarm operators and fire box inspectors in the bureaus of electricity in cities of the second and third class shall be made according to qualifications and fitness, to be ascertained by examinations, which, so far as practicable, shall be competitive, as hereinafter provided. On and after such date, no person shall be reinstated, appointed, promoted, demoted or discharged as a paid member of any fire department *(except the chief and deputy chiefs)*, regardless of rank or position, in any fire department or as a fire alarm operator or fire box inspector in the bureau of electricity, in any city of the second or third class, in any manner or by any means other than those prescribed in this act. (Emphasis added.)

Thus, the Act specifically exempts fire chiefs and deputy fire chiefs from the application of the civil service promotion provision, but nowhere mentions the position of fire marshal. A review of the amendments to the Third Class City Code indicates that all the language of section 2104 of the Code following the first sentence of that section was added by the Act of June 28, 1951, P.L. 662, § 21, which includes the following provision, upon which the trial court relied in part:

The fire marshal ... shall be equally subject to appointment and removal and to all the powers and duties under the act, approved the twenty-seventh day of April, one thousand nine hundred twenty-seven ... as is the chief of the department.

However, that provision does not clearly support the trial court's conclusion because the act to which that sentence refers is one relating to the authority of the Commissioner of State Police to

"appoint and remove the chief of the fire department of any county ... or individual citizens as assistants to the department, and, when so appointed, shall be subject to the obligations imposed by this act and to the authority of the Pennsylvania State Police."

■ Nevertheless, this court agrees with the trial court's conclusion that the Firemen's Civil Service Act did not repeal

or supersede the Third Class City Code's provision granting the mayor of third class cities the power to appoint a fire marshal with the approval and consent of the city council, because, as the trial court noted, the legislature adopted the Firemen's Civil Service Act in 1933, but, in amending section 2104 of the Third Class City Code in 1951, retained the mayoral appointment provision in the Code.

Hence, this court concludes that the trial court was correct in determining that the Firemen's Civil Service Act did not implicitly repeal section 2104 of the Third Class City Code.

■ Because the mayor has the power to appoint under section 2104 of the Code, this court must consider whether the arbitrator erred by ignoring the statutory grant of power to the mayor. The city relies on a number of decisions of this court and one opinion of a trial court in Lawrence County.

In *Barkley v. Lawrence County*, 35 D. & C.3d 491 (1982), a trial court considered whether the district attorney in Lawrence County could properly hire a county employee for the position of assistant county detective, where the negotiated labor agreement between the county and its employees provided that seniority should be the primary factor to be considered for all promotions, transfers, and filling of vacancies.

In that case, the hired employee, Barkley, apparently sought compensation from the county for the work she performed as an assistant county detective.

The trial court in that case recognized that the legislature had vested district attorneys with the right to appoint and control assistant county detectives, and determined that the collective bargaining agreement could not interfere with the district attorney's power to hire and fire. *See Hartshorn v. Allegheny County*, 9 Pa.Commonwealth Ct. 132, 304 A.2d 716 (1973), in which this court concluded that, although a county could enter a collective bargaining agreement that provided for the terms and conditions of employment, the agreement could not interfere with the statutory grant of power to a district attorney to hire and fire employees.

The court in *Barkley* reviewed a long series of cases relating to the issue of whether a collective bargaining agreement may alter the statutory right of an official to appoint persons to a particular position. After summarizing those decisions, the trial court noted that "[o]ne predominant theme appears to run its course through the line of cases ... namely, that the law does not permit the inclusion of provisions in a labor contract which are inconsistent with or violative of a statute." 35 Pa.D. & C.3d at 499.

This court agrees with the trial court's conclusion that the arbitrator issued an award that is contrary to law. Under the essence test, Judge Eshelman correctly vacated the arbitrator's award. Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, December 23, 1993, the order of the Court of Common Pleas of Berks County in the above-captioned matter is affirmed.

NARICK, Senior Judge, concurring.

I join and concur especially to note based on the standard of review applied in this Act 111 grievance proceeding, the Court did not apply the "narrow certiorari" standard of review but rather applied the standard set forth in the Uniform Arbitration Act (UAA), 42 Pa.C.S. § 7302(d), as applied to grievance cases under Act 195. As stated by this Court in *Philadelphia v. F.O.P., Lodge No. 5*, 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989):

Under this Section a reviewing court is permitted to modify or correct an arbitration award only where 'the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.' *Community College [of Beaver County v. Community College of Beaver County, Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267], *Community College* relied upon *United Steelworkers of America v.*

*Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

The UAA's judgment N.O.V. scope of review and the "essence test" are essentially the same. *Community College.* Accordingly, based on the standard of review in this case, whether reviewing grievance arbitration awards involving police or fire personnel (Act 111) and other public employees who are not police or fire personnel, the reviewing court is permitted to utilize the judgment nov/error of law concept. (UAA).

This standard of review set forth in this case constitutes a significant development for courts in reviewing grievance arbitration awards involving public employees whether police or firemen, because now for all practical purposes the standard of review over grievance arbitrations will be the same whether the grievance is under the Act 111, Act 195 or Act–Special.